## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **GREEN MOUNTAIN** | ) | Case No. 14-64287-BEM |
| **MANAGEMENT, LLC, *et al.*,** [1] | ) | (Joint Administration Pending) |
| | ) | |
| Debtors. | ) | |
| | ) | |

### NOTICE OF EXPEDITED HEARING ON DEBTORS'
### EMERGENCY MOTION FOR INTERIM AND FINAL
### ORDERS AUTHORIZING USE OF CASH COLLATERAL AND
### <u>AUTHORIZING AND APPROVING ADEQUATE PROTECTION</u>

**PLEASE TAKE NOTICE THAT** Green Mountain Management, LLC ("Green Mountain") and Georgia Flattop Partners, LLC ("Georgia Flattop," and, together with Green Mountain, the "Debtors") filed their motion (the "Motion") and related papers, seeking entry of an interim order and a final order for authority to, among other things, (i) pursuant to 11 U.S.C. § 363, use, subject to certain terms and conditions, cash collateral within the meaning of 11 U.S.C. § 363(a) and (ii) provide adequate protection under 11 U.S.C. §§ 361 and 363 on account of such use.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion in **Courtroom 1402**, United States Courthouse, 75 Spring Street SW, Atlanta, Georgia 30303 at **10:00 a.m.** (Eastern Time) on **August 4, 2014**.

Your rights may be affected by the court's ruling on the Motion. You should read the Motion carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one. If you do not want the court to grant the relief sought in the Motion or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not

---

[1]     The last four digits of the employer identification number for each of the Debtors follow in parenthesis: (i) Green Mountain Management, LLC (0734) and (ii) Georgia Flattop Partners, LLC (3208). The Debtors' mailing address is 3740 Davinci Court, Suite 460, Norcross, Georgia 30092.

required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk before the hearing.  The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Spring Street, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

ALSTON & BIRD LLP

/s/  Sage M. Sigler
Dennis J. Connolly (Bar No. 182275)
David A. Wender (Bar No. 748117)
Sage M. Sigler (Bar No. 300707)
Kevin M. Hembree (Bar No. 157405)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail: dennis.connolly@alston.com
david.wender@alston.com
sage.sigler@alston.com
kevin.hembree@alston.com

*Proposed Attorneys for Debtors and Debtors-in-Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **GREEN MOUNTAIN** | ) | Case No. 14-64287-BEM |
| **MANAGEMENT, LLC,** *et al.*,[1] | ) | (Joint Administration Pending) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND AUTHORIZING AND APPROVING ADEQUATE PROTECTION

Green Mountain Management, LLC ("**Green Mountain**") and Georgia Flattop Partners, LLC ("**Georgia Flattop**," and, together with Green Mountain, the "**Debtors**") file this motion (the "**Motion**"), for entry of an interim order (the "**Interim Order**")[2] and a final order (the "**Final Order**") for authority to, among other things, (i) pursuant to 11 U.S.C. § 363, use, subject to certain terms and conditions, cash collateral within the meaning of 11 U.S.C. § 363(a) in which the Indenture Trustee (as defined herein) asserts that it has a security interest, and (ii) provide adequate protection under 11 U.S.C. §§ 361 and 363 on account of such use.  In support of this Motion, Debtors represent as follows.

---

[1]     The last four digits of the employer identification number for each of the Debtors follow in parenthesis: (i) Green Mountain Management, LLC (0734) and (ii) Georgia Flattop Partners, LLC (3208). The Debtors' mailing address is 3740 Davinci Court, Suite 460, Norcross, Georgia 30092.

[2]     Any capitalized terms not defined in this Motion have the meaning given to them in the Interim Order.

# I.    BACKGROUND

1.    On July 25, 2014 (the "**Petition Date**"), Debtors filed voluntary petitions with the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the "**Bankruptcy Court**") under chapter 11 of the Bankruptcy Code.

2.    Debtors filed motions with the Bankruptcy Court seeking to have their bankruptcy cases jointly administered pursuant to FED. R. BANKR. P. 1015(b).

3.    In support of this Motion, Debtors incorporate by reference the Declaration of Daniel B. Cowart in Support of Emergency Motions and Applications (the "**Cowart Declaration**," Docket No. 12) and represent as follows.

4.    Debtors have continued in possession of their properties and have continued to operate and manage their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

5.    As of the date of this filing, no official committee of unsecured creditors has been appointed in any of these cases, and no request has been made for the appointment of a trustee or examiner.

# II.    JURISDICTION

6.    This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

### III.    FACTS SPECIFIC TO THIS MOTION

**A.    Debtors' Debt Structure**

7.    **Solid Waste Disposal Revenue Bonds, Series 2010**.    Debtor Green Mountain Management, LLC is party to a Mortgage and Trust Indenture (the "**Trust Indenture**") dated August 1, 2010, with The Solid Waste Disposal Authority of the city of Adamsville ("**SWDA**" or the "**Issuer**"), as "Issuer," and UMB Bank, N.A. ("**Indenture Trustee**" or "**UMB**")[3] as "Trustee" (as those terms are used in the Trust Indenture).    Pursuant to the Trust Indenture, the Issuer issued its $17,000,000 Solid Waste Disposal Revenue Bonds, Series 2010 (the "**Bonds**") to finance the acquisition, construction and equipping of a solid waste disposal facility, including the underlying real property (the real property, solid waste disposal facility and improvements are collectively referred to as the "**Landfill**").

8.    In connection with the Trust Indenture, on August 1, 2010, SWDA leased the Landfill to Green Mountain pursuant to a Lease Agreement (the "**Lease Agreement**"), which provides for rental payments at times and in amounts equal to the amounts owing on the Bonds.    SWDA's interests in the Lease Agreement, including payments due thereunder, were contemporaneously pledged and assigned to the Indenture Trustee as security for the Bonds.

---

[3]    UMB is the successor trustee to The Bank of New York Mellon Trust Company, N.A.

9.     Also on August 1, 2010, Green Mountain entered into a Bond Guaranty Agreement (the "**Bond Guaranty**"), guarantying the payment of the amounts owing on the Bonds.

10.     The Bonds were offered for sale pursuant to a Bond Purchase Agreement between SWDA, Green Mountain and First Tuskegee Bank, as underwriter, dated August 25, 2010 (the "**Bond Purchase Agreement**" and, together with the Trust Indenture, Lease Agreement, Bond Guaranty and other documents delivered as security for or in connection with the Bonds, the "**Bond Documents**"), and subsequently purchased by the Nuveen High Yield Municipal Bond Fund and Nuveen Municipal High Income Opportunity Fund (together with their investment advisor Nuveen Asset Management, LLC, "**Nuveen**" or the "**Bondholder**").

11.     **Debt Service**.  Pursuant to the Bond Documents, Green Mountain is required to make annual principal payments[4] and semi-annual interest payments as rent under the Lease Agreement, which payments are to be applied to the principal and interest due under the Bonds.  Pursuant to the payment schedule, the principal and interest due under the Bonds would be fully satisfied as of their August 1, 2030 maturity date.

12.     To satisfy its payment obligations to the Indenture Trustee, Green Mountain maintains a segregated business checking account into which all customer payments and deposits are made (the "**Customer Deposit Account**").  Each Wednesday,

---

[4]      The first five (5) payments are applied to interest only.

Green Mountain transfers the full balance of the Customer Deposit Account to the Indenture Trustee. On a monthly basis, Green Mountain provides an operating budget to the Indenture Trustee and, upon approval of the budget by the Indenture Trustee, funds equal to the monthly budgeted operating expenses are wire transferred back to Green Mountain. Any excess funds received from the Customer Deposit Account not required to fund the monthly operating expenses are retained by the Indenture Trustee and maintained in a debt reserve account to fund the semi-annual payments due under the Bonds.

13.     Green Mountain made its first five (5) payments due under the Bond Documents, totaling $3,615,451.39, which were applied to interest. Principal and interest payments totaling $1,889,125 were due on August 1, 2013 ($420,000 principal and $743,750 interest) and February 1, 2014 ($725,375). Green Mountain was unable to make those payments.

14.     Green Mountain and the Indenture Trustee entered into a Forbearance Agreement dated February 7, 2014 (the "**Forbearance Agreement**"), pursuant to which the Indenture Trustee agreed to, among other things and subject to certain limitations and requirements, forbear from exercising remedies under the Bond Documents through May 22, 2014.

15.     Green Mountain's next principal and interest payment totaling $1,185,375 ($460,000 principal and $725,375 interest) is due on August 1, 2014. The Forbearance

- 5 -

Agreement further requires the repayment of all overdue amounts on the Bonds no later than August 1, 2014.

16.    As of the Petition Date, the outstanding principal balance due under the Bonds remained $17,000,000.

17.    **Prepetition Security Agreements**.    In connection with the Lease Agreement, Green Mountain pledged to SWDA a first lien on and security interest in (the "**Prepetition Liens**"), among other things, substantially all of Green Mountain's personal property including receipts, revenues, income and receivables, all as more particularly described in the Bond Documents (collectively, the "**Prepetition Collateral**").  SWDA in turn pledged its interests in the Prepetition Collateral, and all other interests in the Lease Agreement, to the Indenture Trustee as security for the Bonds.  The Indenture Trustee's lien on cash in the Debtors' operating accounts is perfected through deposit control agreements entered into by the Debtors, the Indenture Trustee and the applicable depository banks.

18.    The Indenture Trustee and the Bondholder assert that Green Mountain's cash, including but not limited to its bank account balances, future receipts, revenues, income and receivables are subject to the Prepetition Liens and constitute cash collateral (the "**Cash Collateral**") within the meaning of 11 U.S.C. § 363(a).

**B.     Debtors' Need for Cash**

19.     Without the ability to use the Cash Collateral, Debtors will have little choice but to terminate or suspend all operations and dismiss employees, thus destroying the value of their business during the pendency of these Bankruptcy Cases.

20.     Debtors seek Court authority to use Cash Collateral under the terms and conditions of the Motion, the Cash Collateral Budget (defined below), the Interim Order and the Final Order.  The Indenture Trustee and the Bondholder supports Debtors' use of Cash Collateral, subject to these same terms and conditions.

## IV.     RELIEF REQUESTED

**A.     Summary of Relief Requested**

21.     By this Motion, Debtors seek the entry of the Interim Order, substantially in the form attached to this Motion as **Exhibit A** (i) authorizing Debtors to use Cash Collateral, which includes any cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents now or hereafter in the possession, custody or control of Debtors subject to the terms and conditions of the Motion, the Interim Order and a Final Order, and (ii) authorizing and approving the grant of adequate protection to the Indenture Trustee on account of such use.  Further, Debtors seek entry of a Final Order, after at least fourteen (14) days' notice of the Motion.

22.     FED. R. BANKR. P. 4001(b) requires a final hearing on a motion for authorization to use cash collateral to be held on no less than fourteen (14) days' notice. FED. R. BANKR. P. 4001(b) permits the Court to conduct a preliminary hearing prior to

the expiration of the 14-day period to consider authorizing Debtors to use that amount of Cash Collateral, as necessary to avoid immediate and irreparable harm to the estate pending the final hearing.

23.     As indicated above, absent authority to use Cash Collateral, Debtors will have no funds to cover their expenses, including payroll that would accrue until a final hearing could be held on the Motion.  Thus, without authorization to use Cash Collateral on an immediate basis, Debtors would be forced to suspend or close their business and liquidate their assets.  Debtors believe that such a liquidation is inconsistent with the goal of maximizing the value of their estates for the benefit of creditors.

24.     Debtors request that the Court exercise its authority to enter the Interim Order pursuant to FED. R. BANKR. P. 4001(b)(2).  Entry of the Interim Order will not cause irreparable harm to interested parties, because such parties will be granted an opportunity to assert an objection to the Motion subsequent to the entry of the Interim Order (until approximately fourteen (14) days after service of the Motion).  The Interim Order permits the interim use of Cash Collateral in accordance with the Cash Collateral Budget pending a final hearing, which will be scheduled pursuant to the Interim Order.

**B.    Terms of Debtors' Use of the Cash Collateral**

25.     The specific financial terms and conditions of Debtors' proposed use of Cash Collateral are as set forth in the Interim Order.  The principal elements of the Interim Order are summarized as follows:

(a)    **Use of Cash Collateral**.  Debtors will be permitted to use Cash Collateral  as provided in the Interim Order, and solely for the purposes identified, and the amounts provided in the Cash Collateral Budget, for the purpose of meeting Debtors' cash needs from the date of entry of the Interim Order through the Termination Date (described below) in accordance with the budget attached to this Motion as **Exhibit B** and any approved amendments (the "**Cash Collateral Budget**").  For any week, the use of Cash Collateral may vary from the line items in the Cash Collateral Budget so long as the actual expenditures paid by Debtors do not exceed 110% of the projected expenditures in the Cash Collateral Budget and provided that Debtors' weekly minimum cash balance is not less than 90% of the amount projected in the Cash Collateral Budget for the week shown.

(b)    **Adequate Protection**.  Debtors shall provide the following adequate protection to the Indenture Trustee in exchange for use of Cash Collateral:

(i)    *Adequate Protection Liens*.  The Indenture Trustee, for the benefit of the Bondholder, will receive, pursuant to 11 U.S.C. §§ 361(2) and 363(e), a valid, perfected and enforceable security interest (the "**Adequate Protection Liens**") equivalent to a lien granted pursuant to 11 U.S.C. §§ 364(c) and (d) to the extent of any diminution in value of the Indenture Trustee's interest in the Prepetition Collateral from and after the Petition Date.  The Adequate Protection Liens do not extend to chapter 5

- 9 -

causes of action or other assets that would not have constituted Prepetition

Collateral.    Furthermore, the Adequate Protection Liens will not have

priority over any Prior Liens of other purportedly secured lenders or the

Carve-Out (defined below).

(ii) *Adequate Protection Superpriority Claim*.  The Indenture Trustee

will be granted an allowed administrative expense claim pursuant to

11 U.S.C. §§ 503(b), 507(a)(1) and 507(b) to the extent of any diminution

in the Indenture Trustee's (or Bondholder's) interest in the Collateral (as

defined in the Interim Order), and such claim shall have priority over, and

be senior to, all other administrative claims (subject to the Carve-Out) as

set forth in the Interim Order.

(iii) *Adequate Protection*.  As of the Petition Date, the Landfill is

valued in excess of the debt owing on the Bonds, providing an equity

cushion as adequate protection for the interests of the Indenture Trustee and

the Bondholder.

(iv) *Payment of the Indenture Trustee's Professional Fees*.  Debtors

shall pay to the Indenture Trustee the professional fees and expenses

incurred by the Indenture Trustee (whether incurred before or after the

Petition Date), subject to a ten (10) day objection period by Debtors, the

U.S. Trustee or the Committee (if appointed) after delivery of a statement

of fees and expenses (without disclosing the substance of the underlying work or any privileged matters).

(c)    **Debtors' Stipulations**.  Subject to an Investigation Period, equal to the longer of 60-days from the Petition Date or 45 days after the appointment of a committee (if any), *provided, however*, that the Investigation Period shall terminate no later than 90 days from the Petition Date, Debtors stipulate that the security interests and liens granted to the SWDA and the Indenture Trustee pursuant to the Bond Documents constitute valid and perfected security interests and liens not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law.

(d)    **Debtors' Professional Fees**.  Subject to the Carve-Out, Debtors may pay the reasonable fees and expenses of their professionals in accordance with the Cash Collateral Budget and permitted variances.[5]

(e)    **Carve-Out**.  The Carve-Out is for all unpaid fees of the Clerk of Court and the U.S. Trustee and Professional Fees of professionals retained by Debtors and any Committee in an amount not to exceed the amounts in the Cash Collateral Budget.

(f)    **11 U.S.C. §§ 506(c) and 552 Waivers**.  Subject to entry of a Final Order and the Investigation Period, the entry of the Interim Order by the Court shall be a

---

[5]    Prior to the Petition Date, a non-debtor affiliate of Debtors paid to Debtors' proposed counsel, Alston & Bird LLP, a retainer in the amount of $225,000.  All professional fees owing to Alston & Bird will be satisfied first by drawing down on the retainer with any remaining balance due and payable separately by the Debtors, subject to Court approval.

conclusive and binding determination on all parties (x) as to the amount of the Bond Claim, and (y) as to the scope, extent, perfection, validity, and enforceability, in all respects, of the Indenture Trustee's security interests and liens in the Prepetition Collateral, including, without limitation, the Cash Collateral.  Upon entry of a Final Order (not the Interim Order), no costs or expenses of administration that have been or may be incurred in Debtors' cases at any time shall be charged against the Indenture Trustee or its claims and liens pursuant to 11 U.S.C. §§ 105, 506(c) or 552.

(g)     **Termination**.  Without further Court order, Debtors shall no longer be authorized to use Cash Collateral (unless otherwise consented to in writing by the Indenture Trustee) upon the occurrence of a Termination Event.

(h)     **Deemed Request for Stay Relief**.  The Interim Order shall be deemed to constitute a request by the Indenture Trustee for relief from the automatic stay with respect to the Prepetition Collateral for purposes of any request for adequate protection granted by the Interim Order.

(i)     **Modification of Stay**.  Debtors request that the automatic stay imposed by Section 362 of the Bankruptcy Code be vacated and modified insofar as necessary to permit the Indenture Trustee to: (i) receive payments to be made by the Debtors to the Indenture Trustee for and on behalf of the Bondholder, (ii) apply, allocate, or make payments from any of the funds or accounts maintained by the Indenture Trustee (including, without limitation, the Indenture Trustee Funds) in accordance with the terms

of the Bond Documents, and (iii) take any action expressly authorized or contemplated by the Interim Order.

(j)      **Reservation of Rights**.  Except as provided in the Interim Order, neither Debtors nor the Indenture Trustee waive any of their respective rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtors or the Indenture Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtors or the Indenture Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time.

26.    Debtors submit that the proposed use of Cash Collateral under the terms of the Interim Order was negotiated in good faith and at arm's-length, with all parties represented by counsel, and is fair and reasonable under the circumstances of Debtors' cases.

## V.      BASIS FOR REQUESTED RELIEF

### A.    The Indenture Trustee's Interests Are Adequately Protected.

27.    When a debtor has proposed to use cash collateral, the Court pursuant to 11 U.S.C. § 363(c) may permit the use of cash collateral so long as the debtor provides "adequate protection of such interest."  11 U.S.C. § 361 sets forth three non-exclusive examples of adequate protection.  *In re Nashua Trust Co.*, 73 B.R. 423, 430 (Bankr. D.N.J. 1987).  Adequate protection "is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the

- 13 -

reorganization process." *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (quoting *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)). 11 U.S.C. § 361 states, in pertinent part, that when "adequate protection" of an entity's interest in property is required, such adequate protection may be provided by:

(1)     requiring the [debtor in possession] to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use, sale, or lease under [11 U.S.C. § 363] . . . results in a decrease in the value of such entity's interest in such property;

(2)     providing to such entity an additional or replacement lien to the extent that such . . . use, sale [or] lease . . . results in a decrease in the value of such entity's interest in such property; or

(3)     granting such other relief, other than entitling such entity to compensation allowable under [11 U.S.C. § 503(b)(1)] as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

28.     Provision of a replacement lien in property equal to the value of the cash collateral used specifically complies with 11 U.S.C. § 361(2) and provides adequate protection within the meaning of 11 U.S.C. § 363(e). *See, e.g., MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1398 (10th Cir. 1987); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988). The focus of the requirement of adequate protection is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Club Associates*, 107 B.R. 385, 394 (Bankr. N.D. Ga. 1989); *Ridgemont Apartment Associates Ltd. v. Atlanta English Village Ltd.*, 110 B.R. 77, 82 (Bankr. N.D. Ga. 1989).

- 14 -

29.    Debtors' respectfully submit that, pursuant to 11 U.S.C. § 361(2), the Adequate Protection Liens and priority granted to the Indenture Trustee, on behalf of the Bondholder, combined with the substantial equity cushion in the Landfill, constitute adequate protection for Debtors' use of Cash Collateral.  The additional grant of the superpriority administrative expense claim and payment of the Indenture Trustee's professionals further establish that the Indenture Trustee and Bondholder are adequately protected.

30.    Under the circumstances of the Bankruptcy Cases, the interests of the Indenture Trustee, on behalf of the Bondholder, are adequately protected from Debtors' use of Cash Collateral subject to the Interim Order.  Thus, approval of the relief requested in this Motion will allow Debtors to fund the chapter 11 process, maximizing value for their creditors without harming or prejudicing the rights or interests of the Indenture Trustee or Bondholder.

## VI.    SATISFACTION OF BANKRUPTCY RULE 6003(b) AND WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

31.    Pursuant to FED. R. BANKR. P. 6003(b), any motion seeking to use property of the estate pursuant to 11 U.S.C. § 363, or to incur an obligation regarding property of the estate within twenty-one (21) days of the petition date, requires that Debtors demonstrate such relief would prevent "immediate and irreparable harm."  As set forth in this Motion, Debtors do not have sufficient liquidity to properly reorganize, sell or wind-down and liquidate their estates and assets, and immediately obtaining use of cash

collateral is therefore vital to maintaining the value of Debtors' assets. Debtors respectfully submit that they have satisfied FED. R. BANKR. P. 6003(b).

32.    Additionally, any delay in authorizing the relief requested in this Motion would also be detrimental to Debtors, their estates and their creditors. To successfully implement the foregoing, Debtors seek a waiver of the stay imposed under FED. R. BANKR. P. 6004(h), to the extent that provision may be applicable to the order approving this Motion.

## VII.   NOTICE AND PRIOR APPLICATIONS

33.    No trustee, examiner, or official committee of unsecured creditors has been appointed in any of Debtors' chapter 11 cases.

34.    Notice of this Motion has been given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Northern District of Georgia; (b) Debtors' twenty (20) largest unsecured creditors (on a consolidated basis); (c) UMB Bank, N.A., as indenture trustee for the Solid Waste Disposal Revenue Bonds, Series 2010; (d) Nuveen Asset Management, LLC, as beneficial owner of all outstanding Solid Waste Disposal Revenue Bonds, Series 2010; (e) the Internal Revenue Service; (f) Wells Fargo Bank, N.A.; (g) The Piedmont Bank; (h) Tenth Street Fund II, L.P; (i) Debtors' other alleged secured creditors; and (j) all parties requesting notice under Bankruptcy Rule 2002. In light of the nature of the relief requested, Debtors respectfully submit that no further notice is necessary.

35.    No previous request for the relief sought herein has been made by Debtors to this or any other court.

WHEREFORE, Debtors respectfully request that the Court enter an order granting the relief requested herein and granting Debtors such other and further relief as the Court deems just and proper.

Respectfully submitted this 30th day of July 2014.

ALSTON & BIRD LLP

/s/  Sage M. Sigler
Dennis J. Connolly (Bar No. 182275)
David A. Wender (Bar No. 748117)
Sage M. Sigler (Bar No. 300707)
Kevin M. Hembree (Bar No. 157405)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail: dennis.connolly@alston.com
david.wender@alston.com
sage.sigler@alston.com
kevin.hembree@alston.com

*Proposed Attorneys for Debtors and Debtors-in-Possession*

- 17 -

## **Exhibit A**

## **Interim Order**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **GREEN MOUNTAIN** | ) | Case No. 14-64287-BEM |
| **MANAGEMENT, LLC,** *et al.*, [1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## INTERIM ORDER (A) AUTHORIZING DEBTORS' USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE INDENTURE TRUSTEE, (C) SCHEDULING FINAL HEARING, AND (D) GRANTING OTHER RELATED RELIEF

This matter came before the Court on the emergency motion (the "**Motion**")[2] of the above-captioned debtors ("**Debtors**") for an interim order (this "**Interim Order**") and a final order pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 and FED. R. BANKR. P. 2001, 4001, and 9014, (i) authorizing the use of cash collateral (the "**Cash Collateral**"), as such term is defined in 11 U.S.C. § 363, in which the Indenture Trustee (as defined below) asserts that it has an interest, (ii) providing adequate protection to the Indenture Trustee for, among other purposes, any diminution in value of the Indenture Trustee's interests in the Prepetition Collateral (as defined below), including the Cash Collateral, (iii) vacating and modifying the automatic stay imposed by 11 U.S.C. § 362 to the extent necessary to implement and effectuate the terms and provisions of this Interim Order, and (iv) requesting, pursuant to FED. R. BANKR. P. 4001 that a final hearing (the "**Final Hearing**") be held before this Court to consider entry of

---

[1]     The last four digits of the employer identification number for each of the Debtors follow in parenthesis: (i) Green Mountain Management, LLC (0734) and (ii) Georgia Flattop Partners, LLC (3208).  The Debtors' mailing address is 3740 Davinci Court, Suite 460, Norcross, Georgia 30092.

[2]     Capitalized terms not otherwise defined in this Interim Order shall have the meanings ascribed to them in the Motion or the Credit Agreement (as defined herein), as applicable.

a final order approving (a) Debtors' use of Cash Collateral and (b) the grant of adequate protection to the Indenture Trustee, all on a final basis (the "**Final Order**") as set forth in the Motion.

Pursuant to FED. R. BANKR. P. 4001(b) and 4001(c)(1), Debtors provided due and sufficient notice under the circumstances of the Motion and the interim hearing as set forth in paragraph G below. The Court held the interim hearing on August 4, 2014 (the "**Interim Hearing**"), with the appearances of all interested parties noted in the record of the Interim Hearing. The Court has reviewed and considered all of the pleadings filed in connection with the Motion, including objections to the relief requested in the Motion. All objections to the Motion that have not been resolved are overruled with respect to this Interim Order, without prejudice to the rights of such parties to raise any such objections at the Final Hearing or deferred to the Final Hearing. Upon the record Debtors made at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor:

**IT IS STIPULATED BY THE UNDERSIGNED PARTIES:**

A.    On July 25, 2014 (the "**Petition Date**"), Debtors filed voluntary petitions for relief under the Bankruptcy Code commencing their chapter 11 cases (the "**Bankruptcy Cases**"). The Bankruptcy Cases are being jointly administered. Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtors have retained possession of their property and are authorized, as debtors-in-possession, to continue the operation and management of their business. No party has requested the appointment of a trustee or examiner and the Court has not appointed one.

B.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought are 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 and FED.

R. BANKR. P. 4001(b), (c), and (d).  Venue of these Bankruptcy Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.        After consultation with their attorneys and financial advisors, but without prejudice to the rights of any official committee of unsecured creditors (the "**Committee**") (if appointed), or other non-debtor parties in interest if a Committee is not appointed, as set forth in paragraph 14 below, Debtors admit, stipulate, acknowledge, and agree as follows (subparagraphs (i) through (v) below shall be referred to collectively as the "**Debtors' Stipulations**"):

(i)        **Solid Waste Disposal Revenue Bonds, Series 2010**.  Pursuant to that Mortgage and Trust Indenture (the "**Trust Indenture**") dated August 1, 2010, by and among Debtor Green Mountain Management, LLC, The Solid Waste Disposal Authority of the city of Adamsville ("**SWDA**" or the "**Issuer**"), as "Issuer," and UMB Bank, N.A. ("**Indenture Trustee**" or "**UMB**")[3] as "Trustee" (as those terms are used in the Trust Indenture), SWDA issued the $17,000,000 Solid Waste Disposal Revenue Bonds, Series 2010 (the "**Bonds**") to finance the acquisition, construction and equipping of a solid waste disposal facility, including the underlying real property (the real property, solid waste disposal facility and improvements are collectively referred to as the "**Landfill**"). SWDA leased the Landfill to Green Mountain pursuant to a Lease Agreement (the "**Lease Agreement**"), which provides for rental payments at times and in amounts equal to the amounts owing on the Bonds.  SWDA's interests in the Lease Agreement have been pledged and assigned to the Indenture Trustee as security for the Bonds and Green Mountain has guaranteed the payment of the amounts owing on the Bonds.  The Bonds were purchased by the Nuveen High Yield Municipal Bond Fund and Nuveen Municipal

---

[3]        UMB is the successor trustee to The Bank of New York Mellon Trust Company, N.A.

High Income Opportunity Fund (together with their investment advisor Nuveen Asset Management, LLC, "**Nuveen**" or the "**Bondholder**").

(ii)      As of the Petition Date, the amounts due and owing by the Debtors with respect to the Bonds are as follows (collectively, the "**Bond Claim**"):

      i.      Unpaid principal on the Bonds in the amount of $17,000,000;

      ii.      Accrued but unpaid interest on the Bonds in the amount of $1,462,708.33;

      iii.      unliquidated, accrued and unpaid fees and expenses of the Indenture Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

(iii)      The Trust Indenture established certain funds to be held by the Indenture Trustee, including a "Debt Service Reserve Fund" and a "Revenue Fund" (as each term is defined in the Trust Indenture) (the Debt Service Reserve Fund and the Revenue Fund, collectively, the "**Indenture Trustee Funds**").  As of the Petition Date, the aggregate balance of the Debt Service Reserve Fund was approximately $1,042,000.00 million, and the balance of the Revenue Fund was approximately $196,000.  The Debtors acknowledge that the Indenture Trustee Funds are held in trust for the benefit of the Bondholder and that the Indenture Trustee is entitled to use the Indenture Trustee Funds in accordance with the terms of the Trust Indenture and any other document or agreement delivered as security for, or in respect to, the Bonds or the Debtor's obligations under any of such documents (collectively, the "**Bond Documents**").  Notwithstanding this acknowledgement, the Debtors agree not to contest, and the Court finds, that the

Indenture Trustee Funds are held in trust for the Bondholder and are a part of the Prepetition Collateral (as defined below) and the Debtors further consent to a lift of the stay imposed under section 362 of the Bankruptcy Code so as to permit the Indenture Trustee to exercise all of its rights in and with respect to the Indenture Trustee Funds, pursuant to the Bond Documents and the Bankruptcy Code.  Notwithstanding the relief from stay granted in the previous sentence, the Debtors are authorized to use the Cash Collateral in the Revenue Fund as provided for in Cash Collateral Budget, provided, however, that the Debtors shall replenish the amount expended from the Revenue Fund as and when the Debtors' accumulate excess cash that is not required to cover expenditures in the Cash Collateral Budget in excess of $75,000 on an four-week rolling basis, but in no event later than five (5) days following the receipt by the Debtors of the funds projected in the "Storm Debris" line item in the Cash Collateral Budget.

(iv)    **Prepetition Security Agreements**.   In connection with the Lease Agreement, Green Mountain pledged to SWDA a first lien on and security interest in (the "**Prepetition Liens**"), among other things, substantially all of Green Mountain's personal property including receipts, revenues, income and receivables, all as more particularly described in the Bond Documents (collectively, the "**Prepetition Collateral**").   SWDA in turn pledged its interests in the Prepetition Collateral, and all other interests in the Lease Agreement, to the Indenture Trustee as security for the Bonds.   The Indenture Trustee's lien on cash in the Debtors' operating accounts is perfected through deposit account control agreements entered into by the Debtors, the Indenture Trustee and the applicable depository banks.

-5-

(v)      **Validity and Priority of Prepetition Liens, Claims, and Bond Claim**.

Subject to an Investigation Period, equal to the longer of 60-days from the Petition Date or 45 days after the appointment of a committee (if any), *provided, however*, that the Investigation Period shall terminate no later than 90 days from the Petition Date, Debtors stipulate that the security interests and liens granted to the SWDA and the Indenture Trustee pursuant to the Bond Documents constitute valid and perfected security interests and liens not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, except for certain permitted encumbrances (to the extent any valid, properly perfected, unavoidable, and senior permitted encumbrances exist, they are referred to in this Interim Order as the "**Prior Liens**").

D.      Debtors have an immediate and critical need to use Cash Collateral in order to continue to operate their business and effectuate a reorganization of their business, subject to the terms of this Interim Order.  Absent entry of the Interim Order, Debtors' business, property, and estates will be immediately and irreparably harmed.  Debtors have determined that use of Cash Collateral will be sufficient to meet Debtors' immediate postpetition critical needs, subject to the terms of this Interim Order and all other agreements, documents, notes, or instruments delivered pursuant to or under this Interim Order, or in connection with this Interim Order, including, without limitation, the budget, attached to this Interim Order as **Exhibit A** (the "**Budget**").  The Budget, and any supplement or modification to the Budget as allowed pursuant to the terms of this Interim Order, is an integral part of this Interim Order and has been relied upon the Indenture Trustee, on behalf of the Bondholder, in deciding to consent, or not otherwise object, to the entry of this Interim Order.

E.      The Debtors agree that they shall not take any action to assert that: (i) the Bond

Claim is not a valid, binding, and allowed claim against the Debtors' estates; (ii) the Bond Claim

is not secured by valid, enforceable, duly perfected first priority liens on and security interests in

the Prepetition Collateral pursuant to the Bond Documents, and (iii) either the Bond Claim or the

liens or security interests securing the Bond Claim, are subject to avoidance or subordination

pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

F.      Based on the record presented by Debtors to this Court, the use of Cash Collateral

as provided in this Interim Order has been negotiated in good faith at "arm's length" between

Debtors and the Indenture Trustee, on behalf of the Bondholder, and use of Cash Collateral by

Debtors shall be deemed to have been extended, issued, or made, as the case may be, in "good

faith."

G.      As a result of Debtors' use of Cash Collateral, and the imposition of the automatic

stay, the Indenture Trustee is entitled to receive adequate protection pursuant to 11 U.S.C. §§

361, 362, and 363 to the extent of any diminution in the value of its interests in the Prepetition

Collateral (including Cash Collateral) resulting from Debtors' use, sale, or lease of the

Prepetition Collateral (including Cash Collateral) during these Cases, or imposition of the

automatic stay.  As adequate protection, the Indenture Trustee, for the benefit of the Bondholder,

will receive: (1) the Adequate Protection Liens and (2) the Adequate Protection Superpriority

Claim (each defined below).

H.      Notice of the Motion and Final Hearing has been provided to the following

parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the

Northern District of Georgia; (b) Debtors' twenty (20) largest unsecured creditors (on a

consolidated basis); (c) UMB Bank, N.A., as indenture trustee for the Solid Waste Disposal

Revenue Bonds, Series 2010; (d) Nuveen Asset Management, LLC, as beneficial owner of all outstanding Solid Waste Disposal Revenue Bonds, Series 2010; (e) the Internal Revenue Service; (f) Wells Fargo Bank, N.A.; (g) The Piedmont Bank; (h) Tenth Street Fund II, LP; (i) Debtors' other alleged secured creditors; and (i) all parties requesting notice under Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").

**BASED ON THE RECORD OF THE INTERIM HEARING, WITH APPEARANCES OF ALL INTERESTED PARTIES, THE MOTION, AND THE STIPULATIONS, THE COURT FINDS THAT[4]:**

AA.    The Court finds that notice of the Motion, as it relates to this Interim Order, is, under the circumstances, sufficient under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, 11 U.S.C. §§ 102(1), 363, and 364 and FED. R. BANKR. P. 4001(b), (c), and (d) and 9014.

BB.    Good cause has been shown for the entry of this Interim Order.  Among other things, entry of this Interim Order will minimize disruption of Debtors' business and operations and permit Debtors to meet payroll and other operating expenses and maintain customer confidence by demonstrating the ability to maintain normal operations.  The use of Cash Collateral as contemplated in this Interim Order and by the Budget is intended by Debtors to enable them to continue the operation of their business, maximize the value of their estates, and consummate a reorganization of their business or, if necessary to maximize value, a sale, wind-down and liquidation of their assets.

CC.    Debtors represent and it appears that the interim use of Cash Collateral and adequate protection arrangements authorized in this Interim Order have been negotiated in good faith and at arm's length, and the terms of such adequate protection arrangements are fair and

---

[4]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to FED. R. BANKR. P. 7052.

reasonable under the circumstances, reflect Debtors' exercise of prudent business judgment consistent with their respective fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

DD.    An immediate and critical need exists for Debtors to be permitted access to Cash Collateral to continue to operate their business.  Without access to Cash Collateral, Debtors will not be able to pay their respective payroll and other direct operating expenses or to maintain vendor and customer support.

EE.    Debtors have requested immediate entry of this Interim Order pursuant to Rule 4001 of the Bankruptcy Rules.  The permission granted in this Interim Order to allow Debtors to use Cash Collateral is necessary to avoid immediate and irreparable harm to Debtors.

FF.    The Court concludes that entry of this Interim Order is in the best interests of Debtors, their estates, and creditors because its implementation will, among other things, allow for the continued operation of Debtors' existing business.

**BASED ON THE STIPULATIONS AND FINDINGS IT IS ORDERED, ADJUDGED, AND DECREED:**

1.    **Grant of Motion**.  The Motion is granted as provided for in this Interim Order on an interim basis.

2.    **Authorization to Use Cash Collateral; Limitations on Use**.  Pursuant to the terms and conditions of this Interim Order, and pursuant to 11 U.S.C. § 363, Debtors are authorized to use Cash Collateral as provided in this Interim Order, and solely for the purposes identified, and the amounts provided, in the Cash Collateral Budget setting forth, on a line-item basis, Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which Debtors expect to incur during each week of the Cash Collateral Budget; provided, however, that (i) the amounts for each line item may vary

so long as, unless otherwise waived in writing by the Indenture Trustee, the actual expenditures

paid in connection with the Cash Collateral Budget do not exceed 110% of the projected

expenditures in the Cash Collateral Budget and provided that Debtors' weekly minimum cash

balance is not less than 90% of the amount projected in the Cash Collateral Budget for the week

shown and (ii) Debtors' weekly minimum cash balance shall not be less than 90% of the amount

projected in the Cash Collateral Budget for such week.  The Cash Collateral Budget may be

modified or supplemented from time to time by additional budgets (covering any time period

covered by a prior budget or covering additional time periods) prepared by Debtors and approved

by the Indenture Trustee in writing (each such additional budget, a "**Supplemental Approved**

**Budget**"), in each case without further notice, motion or application to, order of, or hearing

before, this Court.  The aggregate, without duplication, of all items in the Budget and any

Supplemental Approved Budgets shall constitute the "**Cash Collateral Budget**".  The Cash

Collateral Budget is an integral part of this Interim Order and has been relied upon by the

Indenture Trustee, on behalf of the Bondholder in deciding to consent, or not otherwise object, to

the entry of this Interim Order.  Without limiting the foregoing, in making decisions to authorize

the use of Cash Collateral or in taking any actions or making any decisions in connection with or

pursuant to the Interim Order, neither the Indenture Trustee nor the Bondholder shall be deemed

in control of the operations of Debtors, or any of Debtors' real or personal property or facilities,

or to be acting as a "responsible person, " "managing agent," or "owner or operator" (as such

terms or any similar terms are used in the United States Comprehensive Environmental

Response, Compensation and Liability Act, or any similar Federal or state statute) with respect to

the operation or management of Debtors, or Debtors' real or personal property or facilities.

Further, in making decisions to allow the use of Cash Collateral or in taking any actions or

-10-

making any decision in connection with or pursuant to the Interim Order, neither the Indenture Trustee nor the Bondholder shall be deemed to be a "responsible party" for, or exercising control over, or making any arrangements for any operations, including clean-up operations, conducted on Debtors' property or for Debtors' benefit.

3.     **Prohibited Use of Cash Collateral**.  Except as expressly provided in this Order, no Cash Collateral or proceeds thereof shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Collateral, the Bond Claim, or any liens or security interests with respect thereto, or any other rights or interests of the Indenture Trustee therein or in the Indenture Trustee Funds; (ii) asserting any claims or defenses or causes of action arising out of, based upon, or related to, in whole or in part, the Bonds or the Bond Documents, against the Indenture Trustee, the Bondholder in its capacity as such, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; (iii) seeking to modify any of the rights granted to the Indenture Trustee hereunder; or (iv) seeking to bifurcate any claims of the Indenture Trustee (outside the terms of any consent by the Indenture Trustee).  Notwithstanding the foregoing, not more than $20,000 of the Cash Collateral may be made available to reimburse any Committee for the Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the Indenture Trustee's liens in the Prepetition Collateral.

4.     **Adequate Protection Liens**.  The Indenture Trustee, for the benefit of the Bondholder, is entitled, pursuant to 11 U.S.C. §§ 361 and 363(e), to adequate protection of its interests in the Prepetition Collateral.  As adequate protection for any diminution in value of the

Indenture Trustee and the Bondholder's interest in the Prepetition Collateral from and after the Petition Date, the Indenture Trustee, on behalf of the Bondholder, is granted, a valid, perfected, and enforceable security interest (the "**Adequate Protection Liens**") equivalent to a lien granted under 11 U.S.C. §§ 364(c) and (d) in and upon (i) all of the assets of Debtors in which the Indenture Trustee had a security interest prior to the Petition Date and created after the Petition Date, wherever the assets are located, including without limitation, all of Debtors' revenues, deposits, rights in the Lease, interests in the Landfill and certain equipment, and including the Prepetition Collateral, all as more particularly described in the Bond Documents, but excluding any causes of action under chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**") and any proceeds of Avoidance Actions, whether such property was owned on the Petition Date or thereafter created, acquired, or arising, and all improvements, additions, and extensions to such property, all replacements of such property, all books and records with respect to such property and all products and proceeds of the foregoing (collectively, the "**Post Petition Collateral**"), and (ii) all other assets of the Debtors of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, exclusive of Avoidance Actions and any proceeds of Avoidance Actions (the "**Supplemental Collateral**" and, collectively with the Post Petition Collateral, the "**Collateral**").  The Adequate Protection Liens shall be subject only to the Carve-Out and any Prior Liens.  Except for the Adequate Protection Liens or as otherwise provided in this Interim Order, pursuant to 11 U.S.C. § 552(a), all property acquired by Debtors after the Petition Date is not and shall not be subject to any lien of any person resulting from any security agreement entered into by Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of Debtors that is subject to a

Prior Lien.  The Adequate Protection Liens granted in this Interim Order (i) are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action by Debtors, the Indenture Trustee or the Bondholder, and without the necessity of the execution, filing, or recordation of any financing statements, security agreements, mortgages or other documents, obtaining control agreements or other agreements over bank accounts and (ii) shall secure the payment of indebtedness to the Indenture Trustee in an amount equal to any diminution in value of the Collateral.  Notwithstanding the foregoing, the Indenture Trustee may, in its sole discretion, file such financing statements, notices of liens, and other similar documents on behalf of itself and the Bondholder, and is granted relief from the automatic stay of 11 U.S.C. § 362 in order to do so, and all such financing statements, notices, and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these Bankruptcy Cases. Upon the request of the Indenture Trustee, the Debtors shall execute such other documents as may be reasonably requested to evidence and perfect such liens; the Indenture Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtors have real or personal property; the Debtors is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the reasonable request of the Indenture Trustee; and such filing or recording shall be accepted and shall constitute further evidence of perfection of the Indenture Trustee's liens and security interests.

5.      **Adequate Protection Superpriority Claim**.  In addition to the Adequate Protection Liens granted to the Indenture Trustee pursuant to this Interim Order, and as additional adequate protection, the Indenture Trustee, on behalf of the Bondholder, is granted an administrative claim under 11 U.S.C. §§ 503(b)(1), 507(a), and 507(b) (the "**Adequate**

-13-

**Protection Superpriority Claim**") to the extent of any diminution in the Indenture Trustee's (or Bondholder's) interest in the Collateral, which shall have priority in these Bankruptcy Cases, under 11 U.S.C. §§ 363(e), 363(c)(1), 503(b), and 507(b) and otherwise over all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in of the kinds specified in or arising or ordered under 11 U.S.C. §§ 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 and unsecured claims against Debtors and their estates, now existing or hereafter arising, of any kind or nature, subject only to prior valid and perfected liens existing as of the Petition Date and the Carve-Out.  Except as permitted by this Interim Order, including without limitation, the Carve-Out, no costs or expenses of administration including, without limitation, Professional Fees (as defined below) allowed and payable under 11 U.S.C. §§ 328, 330, and 331, or otherwise, that have been or may be incurred in these Bankruptcy Cases, and no priority claims are, or will be, senior to, prior to, or on parity with the Adequate Protection Superpriority Claim.

6.        **Adequate Protection**.  As of the Petition Date, the Landfill is valued in excess of the debt owing on the Bonds, providing an equity cushion as additional adequate protection for the interests of the Indenture Trustee and the Bondholder.  Debtors shall pay to the Indenture Trustee, on behalf of the Bondholder, the professional fees and expenses (whether incurred before or after the Petition Date) incurred by the Indenture Trustee on behalf of the Bondholder subject to a ten (10) day objection period by Debtors, the U.S. Trustee or the Committee (if appointed) after delivery of a statement of fees and expenses (without disclosing the substance of the underlying work or any privileged matters)(the "**Adequate Protection Expense Payments**").  Any written objection to payment of the Adequate Protection Expense Payments

-14-

must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice.  None of such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file any interim or final fee application with the Court; provided, however, if an objection to a professional's invoice is timely received, Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

7.      **Debtors' Obligations and Covenants**.  In consideration for the use of the Cash Collateral and other Collateral and as further adequate protection, until Debtors and Debtors' counsel receives written notice of the termination of Debtors' authorization to use Cash Collateral under this Interim Order, Debtors shall:

(a)      use Cash Collateral in accordance with the Cash Collateral Budget and approved variances;

(b)      deliver to the Indenture Trustee, on a weekly basis (on Thursday of each week) and in a form and substance reasonably acceptable to the Indenture Trustee, a report (the "**Variance Report**") detailing actual cash receipts and disbursements for the immediately preceding week, noting therein all variances, including, without limitation, variances to cash balance on a week to week basis, in each case, from values set forth for such period in the Cash Collateral Budget, and shall include explanations for all variances in excess of 10% of budgeted amounts;

(c)         shall provide to the Indenture Trustee such other reports and information as the Indenture Trustee may reasonably request from time to time;

(d)        comply with those terms and provisions of the Bond Documents set forth on Schedule I attached hereto and incorporated herein;

(e)         not sell, lease or otherwise dispose of or transfer any Collateral unless a sale, lease or other disposition of Collateral outside the ordinary course of business is approved and ordered by the Court following notice and a hearing; and

(f)         Debtors shall not increase the salaries, compensation, or bonuses to be paid to any insider of any Debtor, or to any other employee of any Debtor outside of the ordinary course of business, beyond the amounts allocated in the Cash Collateral Budget without the consent of the Indenture Trustee or the approval of the Court following appropriate notice and hearing.

8.        **Payment of Debtors' Professional Fees and Expenses**.  Subject to the terms and conditions contained in this Interim Order, including without limitation, the Carve-Out, Debtors may pay the reasonable fees and expenses of their professionals in accordance with the Cash Collateral Budget, permitted variances[5] and as allowed by the Court (or pursuant to any interim fee order entered by the Court).  The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of Debtors, the Indenture Trustee, the Committee (if one is appointed), the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.

9.        **Carve-Out**.  In partial consideration of the Debtors' acknowledgement of the debt due and owing and the Debtors' waiver of any claims under Section 506(c) of the Bankruptcy

---

[5]        Prior to the Petition Date, a non-debtor affiliate of Debtors paid to Debtors' proposed counsel, Alston & Bird LLP, a retainer in the amount of $225,000.  All professional fees owing to Alston & Bird will be satisfied first by drawing down on the retainer with any remaining balance due and payable separately by Debtors, subject to Court approval.

Code (upon entry of the Final Order), the Indenture Trustee consents to certain expenses and professional fees incurred during the pendency of this Chapter 11 Case which shall be superior in all instances to the liens and claims of the Indenture Trustee and all other parties (the "**Carve Out**").  As used in this Interim Order, the term "Carve-Out" means:  (i) unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) ("**Clerk Fees**" and "**UST Fees**" respectively) and (ii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses ("**Professional Fees**") in amounts equal to the lesser of (x) the amounts provided for in the Cash Collateral Budget and (y) the amounts actually incurred by persons or firms retained by Debtors pursuant to 11 U.S.C. §§ 327, 328, or 363 and any Committee (collectively, the "**Professionals**"), at any time before or on the first business day following the delivery of a Remedies Notice (as defined below), whether allowed by the Court prior to or after the delivery of a Remedies Notice.  Nothing in this Interim Order shall impair the right of any party to object to the reasonableness or allowance of any such Professional Fees to be paid by Debtors' estates.  The Carve-Out shall be senior to the security interests in and liens on all of the Collateral, Adequate Protection Liens, and Adequate Protection Superpriority Claim provided for in this Interim Order, as well as any other claims or liens against Debtors that may arise.  For purposes of calculating the amount of Professional Fees permitted to be paid to a Professional as part of the Carve-Out, the Carve-Out shall be reduced by the aggregate amount of all prepetition retainers held by Professionals.  The entry of a Final Order shall be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against the Indenture Trustee or the Prepetition Collateral or the Collateral under Section 105 of the Bankruptcy Code or, subject to entry of the Final Order, Section 506(c) of the Bankruptcy Code, or otherwise.

10. **Termination of Use of Cash Collateral With Notice**.  In the absence of a further order of this Court, and notwithstanding anything in this Interim Order to the contrary (but subject to the Carve-Out and paragraph 11 below), Debtors shall no longer be authorized pursuant to this Interim Order to use Cash Collateral if a Remedies Notice is provided as set forth herein, the date of occurrence of any of the following events (the earliest such date being referred to herein as the "**Termination Date**," and each of the following events, a "**Termination Event**"):

(a)      Debtors' failure to comply with any of the terms or provisions of this Interim Order;

(b)      the payment of any expense that would cause the aggregate expenditures under the Cash Collateral Budget to exceed 110% for the total budgeted expenses for that same week, or the failure to maintain weekly minimum cash balance of at least 90% of the amount projected in the Cash Collateral Budget for that same week;

(c)      the failure of the Debtors to pay, within thirty (30) days of the applicable due date, all undisputed administrative expenses in full in accordance with their terms as provided for in the Cash Collateral Budget except for any expenses under sections 503(b)(9) or 546(c) of the Bankruptcy Code;

(d)      the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtors (or either of them), or the filing by the Debtors (or either of them) of a motion, application, or other pleading consenting to or acquiescing in any such appointment; and

(e)      the failure of the Debtors to timely pay all fees due under 28 U.S.C. § 1930.

Notwithstanding the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Indenture Trustee and the Bondholder under this Interim Order as of such Termination Date shall survive the Termination Date.

11. **Remedies for Termination with Notice**.  The Indenture Trustee shall provide Debtors, counsel for Committee (and if no Committee is appointed, the twenty (20) largest unsecured creditors of Debtors), and the U.S. Trustee with written notice of the occurrence of a

Termination Event described in paragraph 10 (the "**Remedies Notice**"). Upon the expiration of five (5) business days after such Remedies Notice is sent to Debtors, counsel for Committee (and if no Committee is appointed, the twenty (20) largest unsecured creditors of Debtors), and the U.S. Trustee (the "**Waiting Period**"), the automatic stay provisions of 11 U.S.C. § 362 shall be deemed vacated and modified automatically to the extent necessary to permit the Indenture Trustee, on behalf of the Bondholder, to exercise its rights and remedies under applicable non-bankruptcy law against all or a portion of the Collateral, including, but not limited to, setoff of any existing Cash Collateral securing the Bond Claim, collection of accounts receivable and application of their proceeds in partial satisfaction of the Bond Claim. During the Waiting Period, Debtors shall be authorized to use Cash Collateral only for payment of the Carve-Out or the Adequate Protection Payments, unless consented to by the Indenture Trustee in writing or as otherwise permitted by order of this Court. Following the Waiting Period and upon termination of Debtors' authorization to use Cash Collateral, Debtors may pay any unpaid postpetition administrative expenses provided for under the Cash Collateral Budget so long as such expenses were actually incurred prior to termination. Nothing in this Interim Order shall limit Debtors' ability or authority to seek the use of Cash Collateral on a non-consensual basis. Upon the issuance of a Remedies Notice, the Indenture Trustee agrees that any request by Debtors to consider the use of Cash Collateral on a non-consensual basis may be heard on an expedited, emergency basis. The Indenture Trustee shall have the power to waive any Termination Event set forth in paragraph 10 in its sole discretion without further order of the Court.

12. **Termination of Use of Cash Collateral without Prior Notice**. The Debtors' authority to use Cash Collateral hereunder shall terminate without any further action by this

-19-

Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (also a "**Termination Event**"):

(a)  any stay, reversal, vacatur, or rescission of the terms of this Interim Order, or any other modification of the terms of the Interim Order that is not consented to by the Indenture Trustee;

(b)  entry of an order by this Court or any other Court having jurisdiction over these Bankruptcy Cases approving any postpetition financing that (i) grants liens, claims, or interests that are senior to, or pari passu with, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claim, and (ii) is not consented to by the Indenture Trustee on behalf of the Bondholder;

(c)  entry of an order by this Court dismissing any of the Bankruptcy Cases or converting any of the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code;

(d)   this Court suspends the Chapter 11 Case under Section 305 of the Bankruptcy Code;

(e)  entry of an order by this Court or any other Court having jurisdiction over these Bankruptcy Cases granting relief from the automatic stay so as to allow a third party to proceed against any material asset or assets worth more than $250,000 of Debtors that are Collateral;

(f)  entry of an order under 11 U.S.C. § 506(c) surcharging the Collateral;

(g)  an order is entered in these cases over the objection of the Indenture Trustee approving financing pursuant to Section 364 of the Bankruptcy Code that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the Indenture Trustee under this Interim Order;

(h)  an adversary proceeding or contested matter is commenced by the Debtors (or either of them) challenging the amount, validity, enforceability, priority, or extent of the Indenture Trustee's liens, security interests, or claims;

(i)  any of the Adequate Protection Liens, or any other claims granted to the Indenture Trustee (on behalf of the Bondholder) pursuant to this Interim Order shall cease to be valid, binding, and perfected first-priority liens as and to the extent provided in this Interim Order;

(j)  the Court does not enter the Final Order allowing the use of Cash Collateral on terms acceptable to the Indenture Trustee within sixty (60) days of the entry of the Interim Order; or

(k)  the closing of a sale of all or substantially all of the Collateral.

-20-

Upon the occurrence of a Termination Event described in this paragraph 12, the Debtors'
authority to use Cash Collateral hereunder shall immediately and automatically terminate. The
Indenture Trustee shall have the power to waive any Termination Event set forth in this
paragraph 12 in its sole discretion without further order of the Court.

13. **Monitoring of Collateral**. Debtors shall permit representatives, agents and
employees of the Indenture Trustee to have reasonable access to their premises and their records
during normal business hours (without unreasonable interference with the proper operation of
Debtors' business) and shall cooperate, consult with, and provide to such persons all such non-
privileged information as they may request.

14. **Allowance of Bond Claim; 11 U.S.C. §§ 506(c) and 552(b) Waivers**. Subject
to entry of a Final Order and the Investigation Period, the entry of this Interim Order by the
Court shall be a conclusive and binding determination on all parties (other than the Debtors who
are previously bound as provided herein) (x) as to the amount of the Bond Claim, and (y) as to
the scope, extent, perfection, validity, and enforceability, in all respects, of the Indenture
Trustee's security interests and liens in the Prepetition Collateral, including, without limitation,
the Cash Collateral. Upon entry of a Final Order (not the Interim Order), no costs or expenses of
administration that have been or may be incurred in Debtors' cases at any time shall be charged
against the Indenture Trustee or its claims and liens pursuant to 11 U.S.C. §§ 105, 506(c) or 552.
The "equities of the case" exception contained in 11 U.S.C. §552(b) shall be waived. Further,
the Indenture Trustee shall not be subject to the equitable doctrine of "marshalling" or any
similar doctrine with respect to any of the Collateral.

15.     **Deemed Request for Stay Relief**.  This Interim Order shall be deemed to constitute a request by the Indenture Trustee for relief from the automatic stay with respect to the Prepetition Collateral for purposes of any request for adequate protection granted hereunder.

16.     **Modification of Stay**.  The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the Indenture Trustee to: (i) receive payments to be made by the Debtors to the Indenture Trustee for and on behalf of the Bondholder, (ii) apply, allocate, or make payments from any of the funds or accounts maintained by the Indenture Trustee (including, without limitation, the Indenture Trustee Funds) in accordance with the terms of the Bond Documents, and (iii) take any action expressly authorized or contemplated by this Interim Order.  Except as otherwise provided herein, any of the aforementioned actions may be taken without further order of this Court.

17.     **Reservation of Rights**.  Except as provided in this Interim Order, neither the Debtors nor the Indenture Trustee waives any of their respective rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtors or the Indenture Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtors or the Indenture Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time.

18.     **Further Adequate Protection**.  Nothing in this Interim Order waives any rights of the Indenture Trustee to request at any time that the Court provide additional or further protection of its interest in the Prepetition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided in this Interim Order proves to be inadequate, or the rights of Debtors or Committee (and, if no

-22-

Committee is appointed, the twenty (20) largest unsecured creditors of Debtors) to contest any such request.

19.     **No Duty to Monitor Compliance**.  The Indenture Trustee may assume Debtors will comply with this Interim Order and the Cash Collateral Budget and shall not (i) have any obligation with respect to Debtors' use of Cash Collateral, (ii) be obligated to ensure or monitor Debtors' compliance with any financial covenants, formulae, or other terms and conditions of this Interim Order or the Bond Documents, or (iii) be obligated to pay (directly or indirectly from Cash Collateral) any expenses incurred or authorized to be incurred pursuant to this Interim Order or be obligated to ensure or monitor that such Cash Collateral exists to pay such expenses.

20.     **Survival; Successors and Assigns**.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Indenture Trustee and Debtors and their respective successors and assigns (including, to the extent permitted by applicable law, any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate or as a legal representative of Debtors or with respect to the property of the estates of Debtors).  If an order dismissing either of these Bankruptcy Cases under 11 U.S.C. § 1112 or otherwise is at any time entered, such order shall provide (in accordance with 11 U.S.C. §§ 105 and 349 that the Adequate Protection Superpriority Claim, Adequate Protection Liens, and any other replacement security interests and liens and other protections afforded or granted to the Indenture Trustee pursuant to this Interim Order as of the date of such dismissal shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all obligations shall have been paid and satisfied in full (and that such Adequate Protection Superpriority Claim and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest).  Notwithstanding any reversal, stay, modification, or vacation of this Interim

Order, any use of Cash Collateral prior to such reversal, stay, modification, or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Indenture Trustee shall be entitled to all the rights, remedies, privileges, and benefits granted in this Interim Order with respect to such use.

21.     **Waiver of Stay Under Bankruptcy Rule 6004(h)**.  Debtors have established that immediately obtaining use of cash collateral is vital to maintaining the value of Debtors' assets and have satisfied FED. R. BANKR. P. 6003(b).  The stay imposed under FED. R. BANKR. P. 6004(h) is therefore waived to the extent that provision may be applicable to this Interim Order.

22.     **Findings of Fact and Conclusions of Law**.  This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry of this Interim Order.

23.     **Final Hearing**.  **The Final Hearing on the Motion shall be heard before this Court on [_____], 2014 at \_\_\_\_\_:_____ \_\_\_.m. (prevailing Eastern time) in Courtroom 1402 of the United States Bankruptcy Court for the Northern District of Georgia, 75 Spring Street SW, Atlanta, Georgia 30303.**

24.     **Adequate Notice**.  The notice given by Debtors of the interim hearing was given in accordance with FED. R. BANKR. P. 4001(c)(2).  Within three (3) business days after the Court's entry of this Interim Order, Debtors shall mail copies of this Interim Order and notice of the Final Hearing to the Notice Parties.  Any party-in-interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than **[_____], 2014 at \_\_\_:00 \_.m. (prevailing Eastern time)** on the following:

(i) **Alston & Bird LLP**, One Atlantic Center, 1201 West Peachtree Street, Suite 4200, Atlanta, GA 30309-3424, (Attn:  Dennis J. Connolly, David A. Wender and Sage M. Sigler), proposed counsel to Debtors;

(ii) **Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.**, One Financial Center, Boston, MA 02111 (Attn: Colleen A. Murphy and Kevin J. Walsh), counsel to the Indenture Trustee;

(iii) **Office of the United States Trustee for the Northern District of Georgia**, 362 Richard B. Russell Building, 75 Spring Street, Atlanta, GA 30303 (Attn: David S. Weidenbaum).

IT IS SO ORDERED, this the _____ day of August 2014.

_____
BARBARA ELLIS-MONRO
UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND CONTENT:**

Dated:  August ____, 2014

**ALSTON & BIRD LLP**

By:

_____
Dennis J. Connolly (Bar No. 182275)
David A. Wender (Bar No. 748117)
Sage M. Sigler (Bar No. 300707)
Kevin M. Hembree (Bar No. 157405)

*Proposed Counsel to Debtors and Debtors-in-Possession*

Dated:  August ____, 2014

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.,**

By:

_____
Colleen A. Murphy
Kevin J. Walsh

*Counsel to UMB Bank, N.A., as Indenture Trustee*

## **Schedule I**

Bond Document Provisions

<u>Lease Agreement</u>

      A.  Section 6.1 (Maintenance, Additions, Alterations, Improvements and Modifications)

      B.  Section 6.3 (Taxes, Other Governmental Charges and Utility Charges (as to post-petitions amounts only)

      C.  Section 6.4 (Insurance Required)

      D.  Section 6.5 (Performance by the Authority or Trustee of Certain Lease Obligations. Reimbursement of Expenses)

      E.  Article VII (Provisions Respecting Damage, Destruction and Condemnation)

      F.  Section 8.1 (General Covenants)

      G.  Section 8.2 (Inspection of Project)

      H.  Section 8.4 (Reporting Requirements)

      I.  Section 8.6 (Concerning Certain Actions Under the Indenture)

      J.  Section 8.11 (Debt)

      K.  Section 8.13 (Annual Forecast)

      L.  Section 8.14 (Maintenance Plan)

      M.  Section 8.15 (Liens)

      N.  Section 8.17 (Single-Purpose Entity)

      O.  Section 8.18 (Employee Plans)

      P.  Section 12.7 (Zoning and Environmental Laws)

      Q.  Section 12.8 (Environmental Laws)

<u>Tax Exemption Certificate and Agreement</u> – all covenants

# **Exhibit B**

**Cash Collateral Budget**

GREEN TO GREEN MANAGEMENT, LLC
REVENUES EXPENSE BUDGET

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Week # | 8/2/14 | 8/9/14 | 8/16/14 | 8/23/14 | 8/30/14 | 9/6/14 | 9/13/14 | 9/20/14 | 9/27/14 | Total |
| **Gross Revenues:** | | | | | | | | | | |
| Landfill Disposal: | | | | | | | | | | |
| US Steel Corp. | $ - | - | - | - | 259,862 | - | - | - | 215,009 | 474,871 |
| Municipal solid waste | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 12,600 | 113,400 |
| Construction & demolition waste | 5,837 | 5,837 | 5,837 | 5,837 | 5,837 | 5,837 | 5,837 | 5,837 | 5,837 | 52,533 |
| Storm Debris | - | - | - | - | - | - | - | - | 578,616 | 578,616 |
| Hauling-Waste | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 365 | 3,285 |
| Rock aggregate sales | 6,904 | 6,904 | 6,904 | 6,904 | 6,904 | 6,904 | 6,904 | 6,904 | 6,904 | 62,136 |
| Other | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 950 | 8,550 |
| Gross Revenues: | 26,656 | 26,656 | 26,656 | 26,656 | 286,518 | 26,656 | 26,656 | 26,656 | 820,281 | 1,293,391 |
| Less: Host Fees | (11,828) | - | - | - | (12,000) | - | - | - | (12,000) | (35,828) |
| ADEM Fees | - | - | - | - | - | - | - | - | (40,000) | (40,000) |
| Royalty | - | (560) | - | - | - | (560) | - | - | - | (1,120) |
| Sales & use taxes | - | - | - | (2,700) | - | - | - | - | (2,700) | (5,400) |
| **Net Revenues** | $ 14,828 | 26,096 | 26,656 | 23,956 | 274,518 | 26,096 | 26,656 | 23,956 | 768,281 | 1,211,043 |
| **Operating Expenses:** | | | | | | | | | | |
| Compensation, Benefits & Related Taxes: | | | | | | | | | | |
| Wages, salaries & payroll taxes | 18,508 | 19,198 | 19,198 | 19,889 | 20,580 | 20,580 | 20,580 | 20,580 | 20,580 | 179,693 |
| Sales commissions | - | - | 1,500 | - | - | - | - | 1,800 | - | 3,300 |
| Benefits reimbursements | 7,941 | - | - | - | - | 8,641 | - | - | - | 16,582 |
| Auto Allowance-Sales Manager | 917 | - | - | - | - | 917 | - | - | - | 1,834 |
| Workers compensation | - | 7,584 | - | - | - | - | 3,611 | - | - | 11,195 |
| Payroll  processing fee | 335 | 340 | 345 | 350 | 350 | 350 | 350 | 350 | 350 | 3,120 |
| Subtotal | 27,701 | 27,122 | 21,043 | 20,239 | 20,930 | 30,488 | 24,541 | 22,730 | 20,930 | 215,724 |
| Equipment- Loans & Leases: | | | | | | | | | | |
| Crumbley Backhoe | - | - | - | - | - | - | - | 4,577 | - | 4,577 |
| GE Capital | - | - | - | - | - | - | 14,776 | - | - | 14,776 |
| Hendricks Lease (Paid to FNB Jasper) | - | - | - | - | - | - | 3,088 | - | - | 3,088 |
| Komatsu | - | - | - | - | - | - | 13,207 | - | - | 13,207 |
| Paccar | - | - | - | - | - | - | 4,577 | - | - | 4,577 |
| Sandvik (ACH) | - | - | - | - | - | 6,407 | - | - | - | 6,407 |
| Sandvik (ACH) | - | - | - | - | - | - | - | 12,600 | - | 12,600 |
| Subtotal | - | - | - | - | - | 6,407 | 35,648 | 17,177 | - | 59,232 |
| Fuel & oils | 27,601 | - | 41,067 | - | 38,567 | - | 41,150 | - | 39,187 | 187,573 |
| Insurance | 5,000 | - | - | - | - | 5,000 | - | - | - | 10,000 |
| Utilities/communications/internet | 8,000 | - | - | - | - | 8,000 | - | - | - | 16,000 |
| Repairs & maintenance | 9,750 | 9,750 | 9,750 | 9,750 | 9,600 | 9,600 | 9,600 | 9,600 | 9,600 | 87,000 |
| Tires | - | - | 4,000 | - | - | - | 3,500 | - | - | 7,500 |
| Ground water monitoring & leachate | - | - | - | - | - | - | - | 15,000 | 6,500 | 21,500 |
| Sales expenses | - | 500 | - | - | 500 | - | 500 | - | 500 | 2,000 |
| Office expenses | 250 | - | 250 | - | 250 | - | 250 | - | - | 1,000 |
| Engineering | - | - | 10,000 | - | - | 10,000 | - | - | - | 20,000 |
| Computer/Network support fee | 1,200 | - | - | - | - | 1,200 | - | - | - | 2,400 |
| Bank fees | - | 1,700 | - | - | - | - | 1,700 | - | - | 3,400 |
| Miscellaneous | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 9,000 |
| **Total Operating Expenses** | 80,502 | 40,072 | 87,111 | 30,989 | 70,847 | 71,695 | 117,889 | 65,507 | 77,717 | 642,328 |
| **Other Costs/Expenses:** | | | | | | | | | | |
| Used front end load truck, containers & carts | 63,418 | 30,582 | - | - | - | - | - | - | - | 94,000 |
| Two used tri-axle dump trucks | - | - | - | 110,000 | - | - | - | - | - | 110,000 |
| Equipment Financing (Hauling) | - | - | 83,100 | - | - | - | - | - | - | 83,100 |
| City of Adamsville- garbage collection reimbursement | - | 25,000 | - | - | 25,000 | - | - | - | - | 50,000 |
| Rent/Interest on Bonds | - | | | | | - | | | | - |
| Legal & professional fees | - | - | - | 100,000 | - | - | - | 75,000 | - | 175,000 |
| UMB Trustee Fees | 7,500 | - | - | - | - | 7,500 | - | - | - | 15,000 |
| Subtotal | 70,918 | 55,582 | 83,100 | 210,000 | 25,000 | 7,500 | - | 75,000 | - | 527,100 |
| **Total Operating Expenses & Other Costs/Expenses** | 151,420 | 95,654 | 170,211 | 240,989 | 95,847 | 79,195 | 117,889 | 140,507 | 77,717 | 1,169,428 |
| Net increase (decrease) Cash | (136,592) | (69,558) | (143,555) | (217,033) | 178,671 | (53,099) | (91,233) | (116,551) | 690,564 | 41,615 |
| Beginning Cash | $ 487,269 | 350,677 | 281,119 | 137,564 | 20,531 | 199,202 | 146,103 | 54,870 | 13,320 | 487,269 |
| Professional Fee Retainer | | | | 100,000 | | | | 75,000 | | 175,000 |
| Ending Cash | $ 350,677 | 281,119 | 137,564 | 20,531 | 199,202 | 146,103 | 54,870 | 13,320 | 703,884 | 703,884 |

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| **GREEN MOUNTAIN** | ) | Case No. 14-64287-BEM |
| **MANAGEMENT, LLC,** *et al.*, [1] | ) | (Joint Administration Pending) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**CERTIFICATE OF SERVICE**

I, Sage M. Sigler, certify that I am over the age of 18 and that on July 30, 2014, I served a copy of the foregoing Motion for Use of Cash Collateral and related papers by first class U.S. Mail, with adequate postage prepaid, and via e-mail and/or facsimile (as indicated), on the persons or entities at the addresses on Exhibit 1 hereto.

Dated this 30th day of July 2014.

ALSTON & BIRD LLP

/s/  Sage M. Sigler
Sage M. Sigler (Bar No. 300707)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
E-mail: sage.sigler@alston.com

*Proposed Attorney for Debtors and Debtors-in-Possession*

---

[1]     The last four digits of the employer identification number for each of the Debtors follow in parenthesis: (i) Green Mountain Management, LLC (0734) and (ii) Georgia Flattop Partners, LLC (3208). The Debtors' mailing address is 3740 Davinci Court, Suite 460, Norcross, Georgia 30092.

**EXHIBIT 1**

| | | |
|---|---|---|
| Alston & Bird LLP<br>Attn: Sage Sigler<br>One Atlantic Center<br>1201 W. Peachtree St.<br>Atlanta, GA 30309 | Adams and Reese, LLP<br>1901 6th Avenue North<br>Suite 300<br>Birmingham, AL  35203<br>***Email: richard.carmody@arlaw.com*** | Carroll's Truck & Repair, Inc.<br>P. O. Box 368<br>27961 Hwy 5<br>Woodstock, AL 35188<br>***Fax No. 205-938-1800*** |
| Caterpillar Financial Services Corp.<br>2120 West End Avenue<br>Nashville, TN  37203 | Cintas Facility Services<br>5970 Greenwood Pkwy<br>Bessemer, AL 35023<br>***Fax No. 205-424-2158*** | Crusher Works LLC<br>1166 Raimund Muscoda Rd<br>Bessemer, AL  35020<br>***Fax No. 205-425-8098*** |
| Crumbley Backhoe Service<br>Attn: Ron Crumbley<br>10600 County Road 63 N<br>Carbon Hill, AL  35549<br>***Email: crumbleybackhoe@aol.com*** | Dan Cowart, Inc.<br>Attn: Daniel B. Cowart<br>3740 Davinci Court<br>Suite 460<br>Norcross, GA  30092<br>***Email: dcowart@cowartco.com*** | ET Environmental Corp., LLC<br>Attn: Bill Higginbotham<br>4501 Bridgetown Road<br>Suite 105<br>Cincinnati, OH  45211<br>***Email: bhigginbotham@etenv.com*** |
| First Bank of Jasper<br>P. O. Box 105233<br>Atlanta, GA  30348<br><br>200 18th St W<br>Jasper, AL  35501-5363 | First National Bank of Jasper<br>200 18th St W<br>Jasper, AL  35501-5363 | First Tuskegee Bank<br>660 Adams Avenue<br>Montgomery, AL 36104 |
| GE Capital<br>P. O. Box 740425<br>Atlanta, GA  30374-0425<br>***Fax No. 319-841-6324*** | General Electric Capital Corp.<br>P.O. Box 35701<br>Billings, MT  59107-5701<br>***Fax No. 319-841-6324*** | Georgia Flattop Partners, LLC<br>3740 Davinci Ct., Suite 460<br>Norcross, GA 30092<br>***Email: dcowart@cowartco.com*** |
| Green Mountain Management, LLC<br>100 Green Mountain Parkway<br>Adamsville, AL 35005 | Green Worx LLC<br>Attn: Scott Roberts<br>P. O. Box 154<br>Graysville, AL  35073<br>***Email: scoexhaul@aol.com*** | Hager Oil Company<br>Attn: Phillip Grace<br>P. O. Box 1429<br>Jasper, AL  35502<br>***Email: pgrace@hageroil.com*** |
| Inertia Machine Corporation<br>730 S. Hancock Avenue<br>Freeport, IL  61032<br>***Email: mandy.moore@inertiamachine.com*** | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346<br><br>Tax Division<br>U.S. Department of Justice<br>Attn: Chief, Civil Trial Section, Southern Region<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530-0001 | Internal Revenue Service<br>Centralized Insolvency Operation<br>P.O. Box 21125<br>Philadelphia, PA 19114-0325<br><br>Tax Division<br>U.S. Department of Justice<br>Attn: Chief, Civil Trial Section, Southern Region<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530-0001 |

| | | |
|---|---|---|
| Kitchens Kelley Gaynes PC<br>Attn: Joel Arogeti<br>5555 Glenridge Connector<br>Suite 800<br>Atlanta, GA  30342<br>*Email: Jarogeti@kkgpc.com* | Komatsu Financial LP<br>1701 W. Golf Road<br>Suite 1-300<br>Rolling Meadows, IL  60008<br>*Fax: 847-437-5966* | M & M Tire and Mechanical<br> Services, Inc.<br>1203 1st Avenue SE<br>Graysville, AL 35073<br>*Email: Lockhart.carroll@gmail.com* |
| Michael J. Selwood<br>124 Crofton Drive<br>Pittsburgh, PA  15238<br>*Email: Mjselwood@yahoo.com* | Mintz, Levin, Cohn, Ferris, Glovsky &<br>Popeo, P.C.<br>Attn: Colleen Murphy<br>One Financial Center<br>Boston, MA  02111<br>*Email: camurphy@mintz.com* | Nuveen Asset Management, LLC<br>Attn: John V. Miller<br>333 W. Wacker Dr.<br>Chicago, IL 60606 |
| Office of the United States Trustee<br>Attn: David S. Weidenbaum<br>362 Richard B. Russell Building<br>75 Spring St., SW<br>Atlanta, GA 30303<br>*Email: david.s.weidenbaum@usdoj.gov* | Joel Parmer<br>PACCAR Financial Corp<br>2180 Satellite Blvd., Suite 200<br>Duluth, GA  30097<br>*Email: joel.parmer@PACCAR.com* | Sandvik Customer Finance LLC<br>300 Technology Court<br>Smyrna, GA  30082<br>*Fax: 404-589-3934* |
| Scott's Excavating & Hauling, Inc.<br>Attn: Scott Roberts<br>7771 County Road 222<br>Cullman, AL  35057<br>*Email: scoexhaul@aol.com* | Stone & Sons Electrical<br>2530 Queenstown Road<br>Birmingham, AL  35210<br>*Fax: 205-833-9390* | Tenth Street Fund II, L.P.<br>3388 Saddlebrook Street<br>Las Vegas, Nevada 89141<br>Attention:  R. Alton Duke, Jr.<br>*Email: alduke@tenthstreetcapital.com* |
| The Solid Waste Disposal Authority of<br>City of Adamsville, Alabama<br>Attn: Gina Antolini<br>4828 Main Street<br>Adamsville, AL  35005<br>*Email: gantolini@cityofadamsville.org and*<br>*adamsvillecityclerk@gmail.com* | The Piedmont Bank<br>Attn: Ryan C. Floyd<br>5100 Peachtree Parkway<br>Norcross, GA  30092<br>*Email: Ryan.floyd@piedmontbankonline.com* | Thompson Tractor Co., Inc.<br>2401 Pinson Hwy<br>Birmingham, AL 35217 |
| Tractor & Equipment Company<br>5336 Airport Highway<br>Birmingham, AL  35212 | TruckPro<br>P. O. Box 905044<br>Charlotte, NC  28290-5044<br>*Fax: 205-743-0085* | Veterans Landscaping Co Inc.<br>3801 Mary Taylor Road<br>Birmingham, AL  35235 |
| UMB Bank N.A.<br>Attn: Michael Slade<br>120 South Sixth Street<br>Suite 1400<br>Minneapolis, MN  55402 | Utica Lease Co, LLC<br>44225 Utica Road<br>Utica, MI  48317<br>*Fax: 586-323-8731* | Waldrep, Stewart & Kendrick, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>*Fax: 205-324-3802* |
| Ward and Wilson, LLC<br>2100 Southbridge Parkway<br>Suite 580<br>Birmingham, AL 35209<br>*Fax: 205-871-5758* | Wells Fargo Bank, N.A.<br>Birmingham Business Banking<br>420 North 20th Street, 6th Floor<br>Birmingham, AL 35203<br>*Email: hank.patterson@wellsfargo.com* | Capell & Howard P.C.<br>Attn: Robert D. Rives<br>150 S. Perry Street<br>Montgomery, AL 36102<br>*Email: rdr@chlaw.com* |

| Paychex<br>Attn: Mary E. Edwards<br>1175 John Street<br>West Henrietta, NY 14586-9199<br>***Email: meedwards@paychex.com*** | Jefferson County<br>Department of Revenue<br>P.O. Box 830710<br>Birmingham, AL 35283-0710 | Tax Trust Account<br>Sales Tax Division<br>P.O. Box 830725<br>Birmingham, AL 35283-0725 |
|---|---|---|
| State of Georgia<br>Office of the Attorney General<br>40 Capitol Square, SW<br>Atlanta, GA 30334 | State of Alabama<br>Office of the Attorney General<br>P.O. Box 300152<br>Montgomery, AL 36130-0152 | State of Georgia Revenue Commissioner<br>1800 Century Boulevard<br>Suite 15300<br>Atlanta, GA 30345 |
| Alabama Department of Revenue<br>Commissioner<br>50 North Ripley St.<br>Montgomery, AL 36104 | Georgia Department of Revenue<br>Bankruptcy Insolvency Unit<br>1800 Century Boulevard<br>Suite 1700<br>Atlanta, GA 30345 | State of Alabama Department of Revenue<br>Legal Division<br>P.O. Box 320001<br>Montgomery, AL 36132-0001 |

3