**IT IS ORDERED as set forth below:**

**Date: July 24, 2015**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| GREEN MOUNTAIN MANAGEMENT, | § Case No. 14-64287 |
| LLC., *et al.*, | § |
| | § Jointly Administered |
| Debtors. | § |

**ORDER (I) APPROVING AUCTION AND BIDDING PROCEDURES,
(II) APPROVING PROCEDURES FOR THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, (III) APPROVING THE FORM AND MANNER OF NOTICE,
AND (IV) SCHEDULING THE AUCTION AND SALE HEARING**

This matter came before the Court for hearing on the Debtors' Motion for Entry of

Orders (I) (A) Approving Auction and Bidding Procedures ("Bidding Procedures"), (B)

Approving Procedures Related to the Assumption and Assignment of Executory Contracts and

Unexpired Leases ("Assumption and Assignment Procedures"), (C) Approving Breakup Fee and

Expense Reimbursement, (D) Scheduling Auction ("Auction") and Sale Hearing ("Sale

Hearing"), (E) Approving the Form and Manner of Sale Notice; and (II) (A) Approving the Sale

of Substantially all of the Debtors' Assets Free and Clear of Certain Liens, Claims,

Encumbrances, and Other Interests, and (B) Authorizing the Assumption and Assignment of

Certain Executory Contracts and Unexpired Leases filed by Debtors Green Mountain

Management, LLC and Georgia Flattop Partners, LLC (collectively, the "Debtors") on June 23,

2015 [Docket No. 293] (the "Motion") and on Objections filed by (1) Daniel B. Cowart, the Dan

Cowart Companies, and Green Mountain Aggregates, LLC [Docket No. 308] (the "Cowart

Objection"); (2) CWI Enterprises, LLC, Bay Point Capital Partners, LP, and ET Environmental

Corporation [Docket No. 310] (the "CWI Objection"); and (3) Alawaste, LLC [DocketNo. 311]

(the"Alawaste Objection", together with the Cowart Objection and CWI Objection, the

"Objections").

The Court heard testimony and received other evidence in hearings on July 16 and 20,

2015, and issued its oral ruling at a hearing on July 21, 2015 (collectively, "Bidding Procedures

Hearing"). Based upon the reasoning set forth in its oral ruling, and being satisfied based upon

the evidence presented and arguments of counsel, that the relief requested in the Motion, as

modified herein below, is necessary and is in the best interests of the Debtors, their estates and

their creditors; and it appearing that adequate and sufficient notice of the Motion has been given,

and that no other or further notice is required, the Court hereby Grants in part and Denies in part

the Motion, and Grants in part and Overrules in part the Objections.

The Court Grants the Motion except: 1) the Court reduces the Stalking Horse Breakup

Fee from $300,000 to $50,000; 2) the Court does not allow or approve any provision authorizing

transfer of claims of the Debtors arising under Chapter 5, Title 11, of the United States Code

with the exception of the Debtors' Chapter 5 claims against Daniel B. Cowart and Green

Mountain Aggregates, LLC; 3) the Court does not approve or allow "Super-Priority"

administrative status to any claim for a Breakup Fee or Expense Reimbursement; and 4) to the extent any Bidder is not considered a Qualified Bidder or its Bid is not considered a Qualified Bid by Debtors and/or the Indenture Trustee, upon an objection filed by the Bidder, the Court will hold a hearing to consider any such objection as further provided in the Bid Procedures attached hereto .  Subject to the foregoing, the Motion is Granted and the Objections are Overruled as set forth below.

IT IS HEREBY FOUND AND DETERMINED THAT:[1]

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion, as modified herein, is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

D.      The notice given by the Debtors of the Motion and the Bidding Procedures Hearing constitutes due and sufficient notice thereof and no other or further notice is required.

E.      The Debtors have established good and sufficient reasons for approving: (i) the Bidding Procedures; (ii) the bid protections in favor of the Stalking Horse Purchaser as provided herein; (iii) the manner and form of notice of the Bid Deadline, the Auction and the Sale Hearing in connection with the proposed Sale of substantially all of the Debtors' assets free and clear of certain liens, clams and encumbrances to be distributed to creditors and other parties in interest, including prospective bidders ("Sale Notice"); (iv) the manner and form of notice of the

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052

Assumption and Assignment of certain designated contracts and related cure amounts ("Cure Notice"); and (v) the setting of the Sale Hearing.

F.      The Debtors' payment to the Stalking Horse Purchaser of a breakup fee in the amount of $50,000.00 ("Breakup Fee") and the expense reimbursement in the amount of $150,000.00 in demonstrated expenses (the "Expense Reimbursement"): (i) is an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) is of substantial benefit to the Debtors' estates; (iii) is reasonable and appropriate, in light of the size and nature of the Sale and the efforts that have been and will be expended by the Stalking Horse Purchaser notwithstanding that the proposed Sale is subject to higher or better offers for the Acquired Assets; (iv) was negotiated by the parties at arms' length and in good faith; and (v) is necessary to ensure that the Stalking Horse Purchaser will continue to pursue its proposed acquisition of the Acquired Assets.

G.      The Breakup Fee and Expense Reimbursement were a material inducement for, and condition of, the Stalking Horse Purchaser's entry into the Purchase Agreement. Providing assurances to the Stalking Horse Purchaser that the Breakup Fee and Expense Reimbursement will be paid promotes more competitive bidding by establishing a minimum or "floor" bid. Stalking Horse Purchaser has provided a benefit to the Debtors' estate by increasing the likelihood that the price at which the Acquired Assets are sold will reflect their true worth.

H.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets.

I.      The Initial Overbid and Overbid Increments are fair, reasonable and appropriate.

J.      The Sale Notice, substantially in the form attached to the Motion as <u>Exhibit E</u> is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Sale of the Acquired Assets, the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

K.      The Cure Notice, substantially in the form attached to the Motion as <u>Exhibit F</u> is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Designated Contracts in connection with the Sale of the Acquired Assets and the related Cure Amount, and no other or further notice is required.

THEREFORE, IT IS ORDERED AS FOLLOWS:

<u>Bidding Procedures</u>

1.      The Motion is granted as provided herein.

2.      The Bidding Procedures, attached hereto as Exhibit 1 are hereby approved and shall govern all proceedings relating to the Purchase Agreement and any subsequent bids for the Acquired Assets in these cases.

3.      The Debtors, in consultation with the Indenture Trustee, may: (a) determine, in their reasonable discretion, which Qualified Bid is the highest or otherwise best offer, and (b) reject at any time before entry of an Order of the Court approving the Sale, any bid (other than the Stalking Horse Purchaser's bid) which, in the Debtors' reasonable discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtors, their estates, and their creditors.  The Debtors and, if applicable, the

Indenture Trustee, shall upon request of a bidder whose bid was rejected, provide to such bidder the reasons for their decision to reject the bid. Any objection to the decision to reject a bid or bidder shall be heard by the Court on August 10, 2015 at 10:00 a.m. (the "Bid Qualification Hearing").

4.      The Debtors are authorized (i) in consultation with the Indenture Trustee to terminate the bidding process or the Auction and/or withdraw the Motion at any time and for any reason in their business judgment, and (ii) seek Court approval of the Purchase Agreement with the Stalking Horse Purchaser. Notwithstanding anything to the contrary contained in this Order or the Bidding Procedures, the Stalking Horse Purchaser shall be considered a Qualified Bidder for purposes of participating in the Auction and the Purchase Agreement shall be considered a Qualified Bid.

5.      The deadline for submitting a Qualified Bid in accordance with the Bidding Procedures shall be August 4, 2015 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"). The Debtors reserve the right to extend the Bid Deadline for up to 24 hours if, in their business judgment, such extension would promote competitive bidding among potentially qualified bidders.

6.      The Debtors shall, no later than 24 hours after the Bid Deadline, provide the Stalking Horse Purchaser, Caterpillar Financial Services Corporation ("CFSC") and all other Qualified Bidders with copies of all Qualified Bids.

7.      Unless the Debtors receive at least one other Qualified Bid in addition to the Stalking Horse Purchaser's bid, they will not hold an Auction, and the Stalking Horse Purchase shall be named the Successful Bidder.

8.    If the Debtors receive an additional Qualified Bid, the Debtors shall conduct the Auction on August 11, 2015 at 10:00 a.m. (prevailing Eastern Time) at the offices of Nelson Mullins Riley & Scarborough, LLP, 201 17th Street NW, Suite 1700 Atlanta, GA 30363, or such later time or such other place as the Debtors shall designate in a subsequent notice to all Qualified Bidders.

9.    Only Qualified Bidders may participate in the Auction.  Each such Qualified Bidder participating in the Auction may be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.  The Stalking Horse Purchaser,  Indenture Trustee, and a representative of the Office of the United States Trustee may attend and participate in the Auction.  The Auction will be videotaped and/or transcribed.  Notwithstanding any provision to the contrary in the Purchase Agreement, the Motion, the Bidding Procedures or this Order, any lender holding a valid perfected first priority security interest in financed equipment shall be entitled to credit bid up to the amount of its claim respecting such collateral to acquire such collateral at Auction.

10.    All bidders at the Auction are deemed to have consented to the Bidding Procedures and to the core jurisdiction of this Court, waived any right to a jury trial in any dispute related to the Auction, the Sale or the construction and enforcement of the applicable asset purchase agreement, and except as otherwise provided in this Order and the Bidding Procedures, waived any claim for expense reimbursement, breakup fees or other similar remuneration.

11.    No bids will be accepted after the close of the Auction.

12.     As soon as practicable following the determination of the Successful Bid, the Debtors shall file a notice with the Court identifying the Successful Bidder and serve such notice by telecopy, electronic mail, or overnight delivery upon the following persons: (a) the Office of the United States Trustee for the Northern District of Georgia (b) counsel to the Stalking Horse Purchaser, (c) counsel to Indenture Trustee; (d) other parties that may assert a lien against the Acquired Assets, (e) all Qualified Bidders that have submitted a Qualified Bid, (f) all non-Debtor counterparties to the Designated Contracts proposed to be assumed and assigned under the Successful Bid, (g) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

Sale Hearing

13.     The Sale Notice attached to the Motion as <u>Exhibit E</u> is hereby approved.

14.     The Sale Hearing shall be held on August 12, 2015 at 1:30 p.m. (prevailing Eastern Time) in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Richard B. Russell Bldg, Room 1402, 75 Spring Street SW Atlanta, Georgia 30303, at which time the Court shall consider the Motion and the Sale of the Acquired Assets and the assumption and assignment of the Designated Contracts to the Successful Bidder, and confirm the results of the Auction, if any.

15.     Objections to the Motion shall be (i) in writing and state with particularity the legal and factual bases therefor; and (ii) filed with Court and served on the following parties so as to be actually received no later than 5:00 p.m. (prevailing Eastern Time) on August 10, 2015 (the "<u>Objection Deadline</u>"), provided, however, that Qualified Bidders who attend the Auction may object to the conduct and/or outcome of the Auction at the Sale Hearing: (a) counsel to the Debtors, Nelson Mullins Riley & Scarborough LLP, 201 17th Street NW, Suite 1700 Atlanta,

GA 30363 (Attn: Richard B. Herzog, Jr.; richard.herzog@nelsonmullins.com); (b) the Office

U.S. Trustee for the Northern District of Georgia, 362 Richard B. Russell Bldg., 75 Spring

Street, SW, Atlanta, GA 30303 (Attn: David S. Weidenbaum, david.s.weidenbaum@usdoj.gov);

(c) counsel to the Stalking Horse Purchaser Dentons US LLP, 303 Peachtree Street, NE, Suite

5300, Atlanta, GA 30303, (Attn: Gary W. Marsh, gary.marsh@dentons.com); (d) counsel to the

Successful Bidder if not the Stalking Horse Purchaser, (e) counsel to the Indenture Trustee

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, MA 02111

(Attn: Kevin J. Walsh KWalsh@mintz.com).

16.     The failure of any party to timely file an objection by the Objection Deadline shall

bar the assertion of any objection to the Motion, the Auction, the Sale, the Debtors'

consummation and performance of the Purchase Agreement or other approved asset purchase

agreement (including the transfer of the Acquired Assets and Designated Contracts free and clear

of certain liens, claims, interests and encumbrances, if authorized by the Court).

17.     The Sale Hearing may be adjourned from time to time without further notice to

creditors or parties in interest other than by announcement of the adjournment made in open

court.

Bid Protections

18.     The Breakup Fee and Expense Reimbursement are hereby approved and allowed

as an administrative expense of the Debtors estates under Section 503(b)(1)(A) of the

Bankruptcy Code.  As provided in the Purchase Agreement, the Breakup Fee and Expense

Reimbursement shall be paid in the event of, *inter alia*, a Sale of all or any part of the Acquired

Assets to any party other than the Stalking Horse Purchaser from the proceeds of such Sale at the closing of such Sale.

Assumption and Assignment Procedures

19.    The Assumption and Assignment Procedures are hereby approved.

20.    Within five (5) business dates after the entry of this Order, the Debtors, in consultation with Stalking Horse Purchaser, will file the Cure Notice, substantially in the form attached to the Motion as Exhibit F, with the Court and serve such Cure Notice by first class mail on the non-Debtor counterparties to the Designated Contracts.  The Cure Notice substantially in the form attached to the Motion as Exhibit F is hereby approved.  The Debtors, in consultation with Stalking Horse Purchaser, reserve the right to modify or supplement the Cure Notice at any time prior to the entry of an order approving the assumption and assignment of the affected Designated Contracts.

21.    Any objection to the assumption and assignment of any Designated Contract identified on the Cure Notice, including but not limited to any objection to the stated Cure Amounts or adequate assurance of future performance, must be: (i) in writing and set forth the legal and factual bases therefor, including any cure amount that the objector asserts is due (all with appropriate supporting documentation); (ii) be filed with the clerk of the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Richard B. Russell Bldg, Room 1340, 75 Spring Street, SW, Atlanta, GA  30303; and (iii) served on the following: (a) counsel to the Debtors, Nelson Mullins Riley & Scarborough LLP, 201 17th Street NW, Suite 1700 Atlanta, GA 30363 (Attn: Richard B. Herzog, Jr.; richard.herzog@nelsonmullins.com); (b) the Office U.S. Trustee for the Northern District of Georgia, 362 Richard B. Russell Bldg., 75

Spring Street, SW, Atlanta, GA 30303, (Attn: David S. Weidenbaum, david.s.weidenbaum@usdoj.gov); (c) counsel to the Stalking Horse Purchaser Dentons US LLP, 303 Peachtree Street, NE, Suite 5300, Atlanta, GA 30308, (Attn: Gary W. Marsh, gary.marsh@dentons.com); (d) counsel to the Successful Bidder if not the Stalking Horse Purchaser, and (e) counsel to the Indenture Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center | Boston, MA 02111 (Attn: Kevin Walsh KWalsh@mintz.com), so as to be actually received by no later than 5:00 p.m. (prevailing Eastern Time) on August 7, 2015 (the "Assignment and Cure Objection Deadline").

22.    Any entity that does not timely object as set forth above shall be: (a) forever barred from objecting to the assumption and assignment of its Designated Contracts identified on the Cure Notice, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance; (b) deemed to have consented to and be bound by the applicable Cure Amount, if any, and to the assumption and assignment of the applicable Designated Contract; (c) deemed to have agreed that the Successful Bidder has provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (d) deemed to have agreed that all defaults under the applicable Designated Contract arising prior to the effective date of the assignment have been cured in connection with the assignment and that neither the Successful Bidder nor the Debtors shall have any liability or obligation with respect to any default occurring prior to the assignment, and from and after the date of the assignment the applicable Designated Contract shall remain in full force and effect for the benefit of the Successful Bidder in accordance with its terms; (e) deemed to have waived any right to terminate the applicable Designated Contract as

a result of any default that occurred  prior to the assignment date; (f) deemed to have agreed that the Debtors are not obligated under the Designated Contracts following the effective date of the assumption and assignment; and (g) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Designated Contract.

23.    If such an objection is received timely and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at the Sale Hearing or at a later date set by the Court.  The pendency of a dispute relating to the Cure Amount will not prevent or delay the assumption and assignment of any Designated Contract or the sale of the Acquired Assets to the Successful Bidder.  If an objection is filed with respect only to the Cure Amount listed on the Cure Notice, the dispute with respect to the Cure Amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, before the Court, and subject to the entry of the Sale Order the Debtors may consummate the sale of the Acquired Assets and assumption and assignment of the Designated Contracts and reserve from the cash sale proceeds an amount sufficient to pay the asserted cure amount.

24.    The Debtors, in consultation with the Stalking Horse Purchaser or other Successful Bidder, reserve the right to withdraw the request to assume and assign any Designated Contract prior to the entry of an order approving the assumption and assignment of such contract, for any reason, including if a nondebtor party contests the Cure Amount or the Cure Amount as established by the Bankruptcy Court is unsatisfactory to the Debtors and the Successful Bidder.

25.    Pursuant to the Purchase Agreement, the Stalking Horse Purchaser or other Successful Bidder may elect to purchase financed equipment in conjunction with the Sale,

subject to reaching satisfactory sale and payment terms with the lenders whose claims are secured by perfected, first priority security interest in such equipment.  If those parties are unable to reach agreement on the terms of payment and sale of the financed equipment, such equipment shall be an Excluded Asset under the Purchase Agreement.

<u>Notice</u>

26.     Within two (2) business days after entry of this Order, the Debtors shall serve notice of the Bid Deadline, Auction and Sale Hearing, substantially in the form attached to the Motion as <u>Exhibit E</u> by first class mail on the following persons:

    i.      counsel to the Stalking Horse Purchaser;

    ii.     counsel to the Indenture Trustee;

    iii.    all applicable regulatory agencies and taxing authorities;

    iv.    the Office of the United States Trustee for the Northern District of Georgia;

    v.      any entity known or reasonably believed to have asserted a security interest in or lien against any of the Acquired Assets;

    vi.    all creditors and parties in interest in these Cases;

    vii.   all parties to Designated Contracts;

    viii.  any party that has filed a notice of appearance in these cases;

    ix.    any party who has, within the last twelve months, expressed an interest to the Debtors in purchasing the Acquired Assets, and who the Debtors reasonably believe could consummate such a Transaction;

    x.      any party who the Debtors or their professionals believe would have an interest in purchasing the Acquired Assets.

27.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

28.    CFSC reserves all rights regarding the proposed Sale of it Collateral.

[END OF ORDER]

**Prepared and Presented by**

NELSON MULLINS RILEY & SCARBOROUGH LLP

/s/ Richard B. Herzog, Jr.
Richard B. Herzog, Jr.
Georgia Bar No. 349508
Gregory M. Taube
Georgia Bar No. 699166
201 17th Street, NW, Suite 1700
Atlanta, Georgia  30363
(404) 322-6000
(404) 322-6050 (Fax)
richard.herzog@nelsonmullins.com
greg.taube@nelsonmullins.com

*Attorneys for Debtors and Debtors-in-Possession*

EXHIBIT 1

## IN RE GREEN MOUNTAIN MANAGEMENT LLC, et al.
## BIDDING PROCEDURES

### I.    GENERAL

Set forth below are the Bidding Procedures (the "Bidding Procedures")[1] to be employed with respect to the sale (the "Transaction") of substantially all of the assets (collectively, the "Acquired Assets") of Green Mountain Management, LLC and Georgia Flattop Partners, LLC (collectively, the "Debtors") as debtors and debtors in possession in these chapter 11 cases (the "Cases").  The Acquired Assets to be sold and the terms and conditions upon which the Debtors contemplate consummating a sale are set forth in an Asset Purchase Agreement (the "Purchase Agreement") entered into between the Debtors and Big Sky Environmental, LLC (the "Stalking Horse Purchaser"). The Debtors have filed a copy of the Purchase Agreement and a motion ("Motion") with the Bankruptcy Court seeking: (i) approval of Auction and Bidding Procedures; (ii)  Approval of Procedures for Assumption and Assignment of Designated Contracts; (iii) to Schedule an Auction and Sale hearing; (iv) Approval of the Form and Manner of Notice; (v) Approval of the Sale of the Acquired Assets Free and Clear of Certain Liens, Claims, Encumbrances, and Other Interests; and (vi) Approval of the Assumption and Assignment of Designated Contracts.

The sale of the Acquired Assets is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code ("Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.   The Transaction shall also include the assumption and assignment of certain designated executory contracts and unexpired leases (collectively, the "Designated Contracts") under sections 363 and 365 of the Bankruptcy Code according to the process outlined below.

---

[1] Except as defined herein, all capitalized terms shall have the meanings assigned to them in the Motion.

1

~#4830-5865-0406 -

EXHIBIT 1

These Bidding Procedures are being distributed in connection with the Motion.  On or about July___, 2015, pursuant to the Motion, the Bankruptcy Court entered an Order authorizing the implementation of these Bidding Procedures.

At the Sale Hearing (defined below) scheduled to take place on August 12, 2015 at 1:30 p.m. (prevailing Eastern Time), the Debtors will seek approval of the proposed sale of the Acquired Assets to the Successful Bidder that submits the highest and otherwise best offer for the Acquired Assets pursuant to these Bidding Procedures.

## II.    THE DEBTORS' RIGHT TO NEGOTIATE OFFERS

The Debtors in consultation with the Indenture Trustee shall have the sole right to negotiate any offer made to purchase the Acquired Assets and determine the highest and best offer for the Acquired Assets.

## III.    BID DEADLINE

A potential bidder that desires to make a bid shall deliver the documents and information described in Sections IV and V below to the following persons: (i) counsel to the Debtors, Nelson Mullins Riley & Scarborough, LLP, 201 17th Street NW, Suite 1700, Atlanta, GA 30363 (Attn: Greg Taube, greg.taube@nelsonmullins.com); and (ii) GMM Manager, Lee Katz, GlassRatner Advisory and Capital Group, LLC, 3424 Peachtree Rd., Suite 2150, Atlanta, GA 30305 LKatz@glassratner.com ), (iii) counsel to the Indenture Trustee, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center | Boston, MA 02111 (Attn: Kevin Walsh KWalsh@mintz.com),  so as to be actually received on or before  August 4, 2015 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline") and reserve the right to extend the Bid Deadline for up to 24 hours if, in their business judgment, such extension would promote competitive

2

EXHIBIT 1

bidding among potentially qualified bidders.  No bids submitted after the original or any extended Bid Deadline shall be considered by the Debtors.

**IV.    DUE DILIGENCE**

Subject to a potential bidder entering into a confidentiality agreement satisfactory to the Debtors in their business judgment, the Debtors shall afford any potential bidder whom the Debtors, in consultation with their advisors and the Indenture Trustee, believe has the wherewithal to close a sale transaction and operate the Debtors' businesses, the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion.  The Debtors intend to use reasonable efforts to provide all potential qualified bidders certain information in connection with the proposed Transaction.  However the Debtors failure to deliver any such information shall not affect the validity, effectiveness or finality of the Auction (defined below) or sale process.  All diligence inquiries must be directed to GMM Manager, Lee Katz, GlassRatner Advisory and Capital Group, LLC, 3424 Peachtree Rd., Suite 2150, Atlanta, GA 30305 LKatz@glassratner.com).

**V.    REQUIREMENTS FOR QUALIFIED BIDS**

A bid submitted will be considered a qualified bid ("Qualified Bid") and the potential bidder will be considered a qualified bidder ("Qualified Bidder") only if the Debtors determine, in the exercise of their business judgment in consultation with their advisors and the Indenture Trustee, that the bid and the bidder comply with all of the following requirements:

a. The bid states that the bidder offers (i) to purchase in cash the Acquired Assets, or (ii) to satisfy by payment, assumption or refinance, the Debtors' obligations under the Bonds, including pursuant to the structure of the Purchase Agreement but on better terms thereunder, to assume the Designated Contracts and to assume certain financed and or leased equipment obligations upon the terms and conditions that the Debtors in their business judgment, in consultation with their advisors and the Indenture Trustee, reasonably determine are no less favorable to the Debtors than those set forth in the

3

EXHIBIT 1

Purchase Agreement; provided that in the event an all cash offer for the Acquired Assets is for an amount of cash less than the amount necessary to satisfy in full the claims of the Indenture Trustee, then the Indenture Trustee shall have the right to determine, in its sole discretion, whether that offered amount of cash is acceptable;

b.  The bid includes a signed writing that the bidder's offer is irrevocable until the earlier of 48 hours after the sale of the Acquired Assets has closed or 30 days after the Sale Hearing;

c.  There are no conditions precedent to the bidder's ability to enter into a definitive enforceable agreement and that all necessary internal and shareholder approvals have been obtained prior to the Bid Deadline and there are no conditions precedent (due diligence, financing or otherwise) to the closing of the transaction other than conditions precedent consistent with those set forth in the Purchase Agreement;

d.  The bid includes a duly authorized and executed copy of an asset purchase agreement, including the purchase price for the Acquired Assets and all exhibits and schedules thereto, marked to show any modifications to the Purchase Agreement and the proposed order to approve the sale by the Court attached as Exhibit D to the Motion (the "Sale Order");

e.  The bid includes written evidence of a firm, irrevocable commitment for debt or equity financing, and evidence of the bidder's ability and financial wherewithal to consummate the transaction, that will allow the Debtors in their business judgment, in consultation with their advisors and the Indenture Trustee, to make a determination as to the bidder's financial, regulatory, and other capabilities to consummate the sale transaction contemplated by the asset purchase agreement; provided, however, if the bid involves an assumption of the debt of the Indenture Trustee, then the Indenture Trustee shall have the right to approve the proposed assignee of such debt in the Indenture Trustee's sole discretion.

f.  The bid provides full disclosure of the identity of each entity that will be acquiring an interest in the Acquired Assets or participating in connection with the bid;

g.  The bid provides value to the Debtors that is greater than the sum of (i) the Purchase Price, (ii) a breakup fee in the amount of $50,000.00 (the "Breakup Fee"), (iii) expense reimbursement in the amount of $150,000.00 in documented expenses (the "Expense Reimbursement"), and (iv) $100,000 (the "Initial Overbid"). Additionally, for the avoidance of doubt, the bid must contain a cash component sufficient to pay, in cash, the Overbid, the Breakup Fee, the Expense Reimbursement and the $2.4 million cash component of the Purchase Price;

h.  The bid identifies with particularity which Designated Contracts, financed equipment and other liabilities, if any, the bidder elects to assume and provides details of the bidder's proposal for payment of such liabilities and/or treatment of related cure costs;

4

EXHIBIT 1

i.   The bid includes an acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all required due diligence regarding the Acquired Assets,  the Designated Contracts and financed equipment prior to making its bid; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and of the Acquired Assets and Designated Contracts in making its bid (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise) regarding the Acquired Assets and Designated Contracts or the completeness of any information provided in connection therewith or with the Auction and (iv) is not entitled and waives any right to assert a claim for any expense reimbursement, breakup fee or similar type of payment in connection with its due diligence and bid;

j.   The bid includes evidence, in form and substance reasonably satisfactory to the Debtors, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the asset purchase agreement, and any amendments thereto negotiated or occasioned by its participation in the Auction;

k.   The bid is accompanied by a good faith deposit in the form of a wire transfer to an escrow agent to be specified by the Debtors ("Escrow Agent"), certified check or such other form acceptable to the Debtors, payable to the order of the Escrow Agent in an amount equal to ten percent (10%) of the proposed cash purchase price ("Good Faith Deposit");

l.   The bid contains sufficient information, in the Debtors' business judgment in consultation with their advisors and the Indenture Trustee, concerning the potential qualified bidder's ability to provide adequate assurance of performance with respect to the Designated Contracts;

m.  The bidder commits to supplement the bid with other information reasonably requested by the Debtors or the Indenture Trustee before or after the Bid Deadline;

n.   The bid is received by the relevant parties set forth in these Bidding Procedures prior to the Bid Deadline;

o.   The bid provides contact information, including an email address, whereby the Debtors may communicate electronically with the bidder for, among other things, notification of the time, date and location of the Auction;

p.   Provided that the Stalking Horse Purchaser has not defaulted under the Purchase Agreement, the Indenture Trustee shall not be permitted to submit a credit bid to acquire the Acquired Assets.

5

EXHIBIT 1

The Debtors will review each potential qualified bid to ensure that the bid and bidder meet the requirements set forth above.   The Debtors in their business judgment and after consulting with the Indenture Trustee reserve the right to reject any bid.   The Debtors and, if applicable, the Indenture Trustee, shall upon request of a bidder whose bid was rejected, provide to such bidder the reasons for their decision to reject the bid. Any objection to such decision shall be heard by the Court on August 10, 2015 at 10:00 a.m. (the "Bid Qualification Hearing"). The Purchase Agreement is a Qualified Bid for all purposes and the Stalking Horse Purchaser is a Qualified Bidder for all purposes and requirements pursuant to these Bidding Procedures at all times.

## VI.    <u>EVALUATION OF BIDS</u>

The Debtors may value a Qualified Bid based upon any and all factors that the Debtors deem pertinent, including, among other things: (a) the proposed purchase price of the Qualified Bid, the assumption of liabilities, including financed equipment obligations, if any, and the assumption and cure obligations for Designated Contracts,  (b) the risks and timing associated with consummating the Transaction with the Qualified Bidder, including without limitation all necessary regulatory approvals; (c) the risks associated with any extent of a non-cash consideration in any Qualified Bid; (d) any assets, contracts or leases excluded from the Transaction; (e) the Qualified Bidder's experience in managing landfill assets; (f) the bidder's financial situation and relevant wherewithal; (g) any proposed modifications to the terms set forth in the Purchase Agreement and/or the Sale Order; (h) the probability that a prompt closing will occur;  and (i) any other factors the Debtors may deem relevant to the proposed Transaction.

In the event Debtors and their professionals after consulting with the Indenture Trustee determine that one or more potential qualified bids received from one ore more potential

~#4830-5865-0406 -

EXHIBIT 1

qualified bidder is a Qualified Bid, Debtors shall, no later than 24 hours after the Bid Deadline, file with the Court a notice stating that one or more Qualified Bids have been received and that the Auction will be held.   Debtors shall, no later than 24 hours after the Bid Deadline, provide Stalking Horse Purchaser and all other Qualified Bidders with copies of all Qualified Bids.

## VII.    CREDIT BID BY SECURED EQUIPMENT LENDERS

Notwithstanding any provision to the contrary in the Purchase Agreement, the Motion, these Bidding Procedures or the Bidding Procedures Order, any lender holding a valid perfected, first priority security interest in financed equipment shall be entitled to credit bid up to the amount of its claim respecting such collateral to acquire such collateral at Auction.

## VIII.   DEPOSITS

The Good Faith Deposits of all Qualified Bidders shall be held by the Escrow Agent. The Good Faith Deposits of all potential qualified bidders that are determined not to be Qualified Bidders shall be promptly returned by the Escrow Agent.   The Good Faith Deposits of all Qualified Bidders, other than the Successful Bidder and the Next Best Bidder, shall be returned within two (2) business days after the conclusion of the Sale Hearing (defined below).   The Good Faith Deposit of the Next Best Bidder shall be returned within two (2) business days after the consummation of the Transaction with the Successful Bidder, but in no event later that sixty (60) days after the Sale Hearing.  If a Successful Bidder fails to consummate an approved Transaction because of a breach or failure to perform on the part of such Successful Bidder, such Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors subject to the terms of the Purchase Agreement.  Any disputes with respect to Good Faith Deposits shall be resolved by the Court.

EXHIBIT 1

## IX.   **MODIFICATION/RESERVATION OF RIGHTS**

The Debtors in consultation with the Indenture Trustee may determine in their reasonable discretion which Qualified Bid(s) if any to present to the Court as the highest or best offer for the Acquired Assets.  In consultation with the Indenture Trustee, the Debtors may reject at any time before entry of an order of the Court approving any Qualified Bid as the Successful Bid, any bid other than the Stalking Horse Purchaser that in the Debtors' reasonable discretion is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures or (c) contrary to the best interests of the Debtors and their bankruptcy estates and creditors.  The Debtors may in consultation with the Indenture Trustee, withdraw in their business judgment for any reason the Motion or cancel the Auction and pursue an alternative transaction.

## X.   **AUCTION**

If the Debtors do not receive any Qualified Bids other than from the Stalking Horse Purchaser, they will not hold an Auction and the Stalking Horse Purchaser will be named the Successful Bidder, subject to entry of the Sale Order.

If more than one Qualified Bid has been received, the Debtors will conduct an auction ("Auction") for the sale of the Acquired Assets.  Prior to the Auction, the Debtors will send a copy of all Qualified Bids to all Qualified Bidders.  The Auction will take place on August 11, 2015 at 10:00 a.m. (prevailing Eastern Time) at Nelson Mullins Riley & Scarborough, LLP, 201 17th Street NW, Suite 1700, Atlanta, GA 30363, or such later time or such other place as the Debtors may designate in a subsequent notice to all Qualified Bidders and Notice Parties.  The Auction may be adjourned or rescheduled without further notice by an announcement of the

EXHIBIT 1

adjourned date at the Auction. The Debtors reserve the right to cancel the Auction in their business judgment.

Only the Stalking Horse Purchaser and other Qualified Bidders will be eligible to participate in the Auction. Representatives of the following parties-in-interest shall be entitled to attend and observe the Auction: the Debtors, Qualified Bidders, the Indenture Trustee, the Office of the United States Trustee, and the Debtors' principal, Daniel Cowart and his counsel. The Debtors, in their discretion may deny access to the Auction to any other person, including the media.

Each Qualified Bidder may be required to confirm at the commencement of, and from time to time during the Auction, that it has not engaged in any collusive behavior with respect to the sale of the Acquired Assets, the bidding or the Auction. Bidding at the Auction will be videotaped and/or transcribed.

The bidding shall start at the amount offered in the highest or best Qualified Bid, as determined and announced by the Debtors, in consultation with their advisors and the Indenture Trustee. After an Initial Overbid is received, the bidding will continue thereafter in cash increments of at least $100,000.00 ("Overbid Increments") until the bidding ceases; <u>provided however</u> that the Stalking Horse Purchaser shall not be required to include a Breakup Fee or Expense Reimbursement in any overbid.

Prior to the conclusion of the Auction, the Debtors, in consultation with their advisors and the Indenture Trustee will (a) review the last bid each of the Qualified Bidders made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those identified above, (b) determine the highest or otherwise best bid or combination of bids for the Acquired Assets and Designated Contacts at the Auction

EXHIBIT 1

("Successful Bid") and (c) notify all Qualified Bidders at the Auction of the name of the person that submitted the Successful Bid (the "Successful Bidder"). No bids shall be accepted after the close of the Auction. The Debtors will present the Successful Bid to the Court for approval at the Sale Hearing.

After determining the Successful Bid, the Debtors may, in consultation with their advisors and the Indenture Trustee, determine which Qualified Bid is the next best bid ("Next Best Bid"). The Debtors will present the Next Best Bid to the Court, for approval at the Sale Hearing. If the successful bidder does not close the Transaction by the date set forth in the Successful Bid or otherwise agreed to by the Debtors and the successful bidder, then the Debtors shall be authorized to close with the party that submitted the Next Best Bid ("Next Best Bidder"), without further court order. The Next Best Bidder shall be required to close the Transaction by the date set forth in the Next Best Bid or otherwise agreed to by the Debtors and the Next Best Bidder.

All bidders at the Auction shall be deemed to have consented to these Bidding Procedures and to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale and the construction and enforcement of the applicable Competing Agreement.

## XI.     NO ENTITLEMENT TO FEES FOR POTENTIAL BIDDERS OR QUALIFIED BIDDERS

The performance of due diligence, the tendering of a bid, the determination that a bid is a Qualified Bid or the participation of a Qualified Bidder at the Auction shall not entitle a potential qualified bidder or Qualified Bidder to any breakup, termination or similar fee or reimbursement of expenses and all potential qualified bidders and Qualified Bidders waive any right to seek payment of such sums, including any claim for substantial contribution. Notwithstanding the

10

EXHIBIT 1

foregoing, the Stalking Horse Purchaser shall be entitled to payment of the Breakup Fee and the

Expense Reimbursement as provided in the Purchase Agreement and the order approving these

Bidding Procedures.

## XII.    <u>AS IS, WHERE IS</u>

The Transaction shall be on an "as is, where is" basis except as expressly set forth in the

Purchase Agreement. Except as otherwise expressly provided in these Bidding Procedures, the

Purchase Agreement, or any applicable asset purchase agreement, each Qualified Bidder shall be

deemed to acknowledge and represent that it: (i) has had an opportunity to conduct any and all

reasonable due diligence regarding the Acquired Assets and Designated Contracts prior to

making its bid; (ii) has relied solely upon its own independent review, investigation and/or

inspection of any documents and/or the Acquired Assets and Designated Contracts in making its

bid; and (iii) did not rely upon any written or oral statements, representations, promises,

warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise,

regarding the Acquired Assets and Designated Contracts, or the completeness of any information

provided in connection therewith.

## XIII.    <u>SALE HEARING</u>

The Debtors will seek entry of an order from the Court at a hearing (the "<u>Sale Hearing</u>")

to begin on August 12, 2015 at 1:30 p.m. (prevailing Eastern Time) to approve and authorize the

Transaction with the Successful Bidder and, if applicable, conditionally approve the Transaction

with the Next Best Bidder. The Sale Hearing may be adjourned or rescheduled without further

notice by an announcement of the adjourned date at the Sale Hearing.

~#4830-5865-0406 ~

## Distribution List

| | | |
|---|---|---|
| Frank DeBorde<br>Lisa Wolgast<br>Morris Manning & Martin, LLP<br>3343 PeachtreeRoad, NE<br>Suite 1600<br>Atlanta, GA  30326 | Dan Cowart, Inc.<br>Attn:  Daniel B. Cowart<br>3740 Davinci Court<br>Suite 460<br>Norcross, GA  30092 | Alston & Bird LLP<br>Attn:  Sage Sigler<br>One Atlantic Center<br>1201 W. Peachtree Street<br>Atlanta, GA  30309 |
| ET Environmental Corp., LLC<br>Attn:  Bill Higginbotham<br>4501 Bridgetown Road<br>Suite 105<br>Cincinnati, OH  45211 | Adams and Reese, LLP<br>Attn:  Richard Carmody<br>1901 6th Avenue North<br>Suite 300<br>Birmingham, AL  35203 | Green Mountain Management, LLC<br>3740 Davinci Court, Suite 460<br>Norcross, GA  30092 |
| Carroll's Truck & Repair, Inc.<br>P.O. Box 368<br>27961 Highway 5<br>Woodstock, AL  35188 | First Bank of Jasper<br>200 18th Street W<br>Jasper, AL  35501-5363 | First Tuskegee Bank<br>660 Adams Avenue<br>Montgomery, AL  36104 |
| Crumbley Backhoe Service<br>Attn:  Ron Crumbley<br>10600 County Road 63N<br>Carbon Hill, AL  35549 | Inertia Machine Corporation<br>Attn:  Mandy Moore<br>730 S. Hancock Avenue<br>Freeport, IL  61032 | Cintas Facility Services<br>5970 Greenwood Pkwy<br>Bessemer, AL  35023 |
| General Electric Capital Corp.<br>P.O. Box 35701<br>Billings, MT  59107-5701 | Crusher Works, LLC<br>1166 Raimund Muscoda Rd.<br>Bessemer, AL  35020 | Georgia Flattop Partners, LLC<br>3740 Davinci Court, Suite 460<br>Norcross, GA  30092 |
| GE Capital<br>P.O. Box 740425<br>Atlanta, GA  30374-0425 | GE Capital<br>Attn:  Kimberly LeVelle<br>1010 Thomas Edison Blvd. SW<br>Cedar Rapids, IA  52404 | Green Worx LLC<br>Attn:  Scott Roberts<br>P.O. Box 154<br>Graysville, AL  35073 |
| Stone & Sons Electrical<br>2530 Queenstown Road<br>Birmingham, AL  35210 | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA  19101-7346 | Sandvik Customer Finance LLC<br>300 Technology Court<br>Smyrna, GA  30082 |

| | | |
|---|---|---|
| Kitchens Kelley Gaynes, P.C.<br>Attn: Mitchell S. Rosen<br>5555 Glenridge Connector<br>Glenridge Highlands One,<br>Suite 800<br>Atlanta, GA 30342 | Charles L. Denaburg<br>Marvin E. Franklin<br>Steven D. Altmann<br>Najjar Denaburg, P.C.<br>2125 Morris Avenue<br>Birmingham, AL 35203 | Internal Revenue Service<br>Tax Division<br>U.S. Dept. of Justice<br>Attn: Chief, Civil Trial<br>Section, South Region<br>840 Pennsylvania Ave, NW<br>Washington, DC 20530-0001 |
| The Piedmont Bank<br>Attn: Ryan C. Floyd<br>5100 Peachtree Pkwy<br>Norcross, GA 30092 | M&M Tire and Mechanical<br>Services, Inc.<br>Attn: Rhonda L. Holley<br>1203 1st Avenue<br>Graysville, AL 35073 | Jeffrey W. Maddux<br>Chambliss, Bahner & Stophel,<br>PC<br>Liberty Tower, Suite 1700<br>605 Chestnut Street<br>Chattanooga, TN 37450 |
| Michael J. Selwood<br>124 Crofton Drive<br>Pittsburgh, PA 15238 | Tractor & Equipment<br>Company<br>5336 Airport Highway<br>Birmingham, AL 35212 | Cohen Pollock Merlin &<br>Small<br>Attn: Karen Fagin White and<br>Anna M. Humnicky<br>3350 Riverwood Pkwy, Suite<br>1600<br>Atlanta, GA 30339 |
| TruckPro<br>P.O. Box 905044<br>Charlotte, NC 28290-5044 | Thompson Tractor Co., Inc.<br>2401 Pinson Hwy<br>Birmingham, AL 35217 | Nuveen Asset Management,<br>LLC<br>Attn: John V. Miller<br>333 W. Wacker Dr.<br>Chicago, IL 60606 |
| Ward and Wilson, LLC<br>2100 Southbridge Parkway<br>Suite 580<br>Birmingham, AL 35209 | Scott's Excavating & Hauling,<br>Inc.<br>Attn: Scott Roberts<br>7771 County Road 222<br>Cullman, AL 35057 | Utica Lease Co., LLC<br>44225 Utica Road<br>Utica, MI 48317 |
| Veterans Landscaping Co.,<br>Inc.<br>3801 Mary Taylor Road<br>Birmingham, AL 35235 | Tax Trust Account<br>Sales Tax Division<br>P.O. Box 830725<br>Birmingham, AL 35283-0725 | Paychex<br>Attn: Mary E. Edwards<br>1175 John Street<br>West Henrietta, NY 14586-<br>9199 |

| | | |
|---|---|---|
| Alabama Department of Revenue Commissioner 50 North Ripley Street Montgomery, AL 36104 | Jefferson County Department of Revenue P.O. Box 830710 Birmingham, AL 35283-0710 | State of Alabama Dept of Revenue Legal Division P.O. Box 320001 Montgomery, AL 36132-0001 |
| Waldrep, Stewart & Kendrick, LLC 2323 2nd Avenue North Birmingham, AL 35203 | Margaret S. Puccini Kathleen Horne Bouhan Falligan, LLP P.O. Box 2139 Savannah, GA 31402-2139 | Wells Fargo Bank, N.A. Attn: Hank Patterson Birmingham Business Banking 420 North 20th St., 7th Floor Birmingham, AL 35203 |
| State of Alabama Office of Attorney General P.O. Box 300152 Montgomery, AL 36130-0152 | Ron C. Bingham, II Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. Monarch Plaza, Suite 1600 3414 Peachtree Road Atlanta, GA 30326 | Capell & Howard, P.C. Attn: Robert D. Rives 150 S. Perry Street Montgomery, AL 36102 |
| State of Georgia Revenue Commissioner 1800 Century Blvd. Suite 15300 Atlanta, GA 30345 | State of Georgia Office of the Attorney General 40 Capitol Square, SW Atlanta, GA 30334 | Office of the United States Trustee Attn: David S. Weidenbaum 362 Richard B. Russell Bldg. 75 Spring Street Atlanta, GA 30303 |
| Georgia Department of Revenue Bankruptcy Insolvency Unit 1800 Century Blvd. Suite 1700 Atlanta, GA 30345 | Matthew C. McDonald Jones Walker LLP 11 N. Water Street Suite 1200 Mobile, AL 36602 | Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. Attn: Colleen Murphy and Kevin Walsh One Financial Center Boston, MA 02111 |
| Parker, Hudson, Rainer & Dobbs, LLP Attn: Eric W. Anderson 1500 Marquis Two Tower 285 Peachtree Center Avenue, NE Atlanta, GA 30303 | George M. Geeslin Eight Piedmont Center, Suite 550 3525 Piedmont Road, NE Atlanta, GA 30305-1565 | Nathan Johns MendenFreiman LLP Two Ravina Drive Suite 1200 Atlanta, GA 30346 |

Page **17** of **18**

| | | |
|---|---|---|
| Jimmy C. Luke<br>Martin Bagwell Luke, P.C.<br>400 Northridge Road<br>Suite 1225<br>Atlanta, GA  30350 | Joseph J. Burton, Jr.<br>Mozley, Finlayson & Loggins,<br>LLP<br>One Premier Plaza, Suite 900<br>5605 Glenridge Drive<br>Atlanta, GA  30342 | John A. Christy<br>Schreeder, Wheeler & Flint<<br>LLP<br>1100 Peachtree Street, NE<br>Suite 800<br>Atlanta, GA  30309-4516 |
| Ted W. Hight, III<br>Thompson, O'Brien, Kemp &<br>Nasuti, P.C.<br>40 Technology Parkway South<br>Suite 300<br>Norcross, GA  30092 | Internal Revenue Service<br>Centralized Insolvency<br>Operation<br>P.O. Box 21125<br>Philadelphia, PA  19114-0325 | Alexandra K. Kraus<br>Lefkoff, Rubin, Gleason &<br>Russo, P.C.<br>Glenridge Highlands One<br>5555 Glenridge Connector<br>Suite 900<br>Atlanta, GA  30342 |
| David E. Gordon<br>Gary Marsh<br>Dentons US LLP<br>303 Peachtree Street<br>Suite 5300<br>Atlanta, GA  30308 | GlassRatner Advisory &<br>Capital Group, LLC<br>3475 Piedmont Road<br>Suite 1900<br>Atlanta, GA  30305 | |